IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRADLEY WILLCOX, FRANK DOMINICK, AND MICHELE SHERIE DOMINICK, | ) CIVIL NO. 13-00508 ACK-RLP<br>)<br>) FINDINGS AND RECOMMENDATION TO<br>) GRANT IN PART AND DENY IN PART |
| Plaintiffs, | ) PLAINTIFFS' MOTION FOR CLASS<br>) CERTIFICATION |
| vs. | )<br>) |
| LLOYDS TSB BANK, PLC AND DOES 1-15. | )<br>)<br>) |
| Defendants. | )<br>) |

FINDINGS AND RECOMMENDATION TO GRANT IN PART AND
DENY IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION[1]

A hearing was held on Plaintiffs' Motion for Class Certification on November 10, 2015.  Glenn T Melchinger, Esq. and Stephen A. Fennell, Esq. appeared for Plaintiffs; Christian K. Adams, Esq. and Martha S. Sullivan, Esq. appeared for Defendant Lloyds TSB Bank plc (now known as Lloyds Bank plc).  After carefully considering the arguments of counsel, the supporting and opposing memoranda, declarations, and exhibits attached thereto, the record established in this action, and the relevant legal authority, the Court FINDS AND RECOMMENDS that Plaintiffs' Motion be GRANTED IN PART AND DENIED IN PART.

---

[1] Within fourteen days after a party is served with a copy of the Findings and Recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1)(B), file written objections in the United States District Court.  A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the Findings and Recommendation.  If no objections are filed, no appellate review will be allowed.

BACKGROUND

This case involves the issuance by Defendant of dual currency, or International Mortgage System ("IMS"), loans.  IMS loans are mortgage loans with a currency switching feature that allows borrowers to switch the currency of their loans between U.S. Dollars and other currencies.

Defendant is a wholly-owned subsidiary of Lloyds Banking Group, PLC.  ECF No. 100 ¶ 9.  Defendant is organized under the laws of the United Kingdom and, although a subsidiary, maintains branches throughout the world, including a branch in Hong Kong, through which Defendant issued IMS loans to Plaintiffs.[2]  Id.  Defendant obtains funding from its parent.

Plaintiffs obtained IMS loans secured by mortgages on real property located in Hawaii and California.  ECF No. 100 ¶¶ 21-22, 28-30.  These loans all have an interest rate set at 1.5% above the "Cost of Funds," with the interest rate period fixed for successive three month periods.  Id. ¶¶ 2, 16.  The Cost of Funds is defined in the facility agreements as "the cost (calculated to include the costs of complying with liquidity and reserve asset requirements) in respect of any currency expressed as a percentage rate of funding for maintaining the Advance or Advances in that currency as conclusively nominated by the Bank

---

[2] As addressed in the discussion of commonality below, it appears that at least seventeen of the loans in the putative class were issued out of Defendant's Singapore office.

2

from time to time." Id.

Plaintiff Bradley Willcox is a resident of Hawaii who, in 2007, took out approximately $1,284,500 in four IMS loans from Defendant, secured by four real properties located in Honolulu, Hawaii.  ECF No. 100 ¶¶ 6, 21-22.  Dr. Willcox took out the loans in U.S. Dollars and, shortly after the closing of the transaction, chose to redenominate them to Japanese Yen.  Id. ¶ 23.  After he did so, the Yen grew stronger relative to the U.S. Dollar and the interest rate on Dr. Willcox's loans rose. Id. ¶ 24.  Plaintiffs allege that the "dramatic increase" was the product, in part, of Defendant's "arbitrary increases" in its Cost of Funds.  Id. ¶ 25.  Plaintiffs allege that, as a result of these alleged arbitrary increases, Dr. Willcox has paid substantially more than he otherwise would have over the course of the loans.  Id.

Plaintiff Frank Dominick is a legal resident of Hong Kong.  Id. ¶ 7.  Plaintiff Michele Sherie Dominick is a legal resident of California.  Id. ¶ 8.  In 2007, the Dominicks took out a $2,700,000 IMS loan from Defendant, secured by property located in Honolulu, Hawaii, and a second IMS loan for $1,762,500 secured by a property in Los Angeles, California.  Id. ¶¶ 28-30. The Dominicks allege that their loans were always denominated in Yen.  Id. ¶ 30.  As was the case for Dr. Willcox, once the exchange rate began to drop with the Yen growing stronger in

3

relation to the U.S. Dollar, the Dominicks' interest rate on their loans rose. Id. ¶ 32. Plaintiffs allege that the Dominicks' quarterly interest payments had risen "dramatically" by 2012. Id. Specifically, the Dominicks allege that their payments on the Hawaii property loan in March 2007 were equivalent to approximately $15,800 in U.S. Dollars, but that the payments had increased to roughly the equivalent of $28,300 by September 2012. Id. ¶ 33. Plaintiffs allege that this increase was the result of Defendant's arbitrary increases of its Cost of Funds. Id. ¶ 34. According to Plaintiffs, the Dominicks have paid significantly more money over the course of the loans than they otherwise would have as a result of Defendant's increases in its Cost of Funds. Id. ¶ 35.

Plaintiffs allege that Defendant arbitrarily increased the Cost of Funds component of the variable interest rates of the IMS loans thereby substantially increasing the IMS loans' interest rates. Id. ¶ 4. Plaintiffs further allege that Defendant increased its Cost of Funds during a time when standard indexes for interest rates decreased. Id. Plaintiffs assert that, from 1985 to 2008, Defendant used one method for calculating its Cost of Funds, but that in 2009 Defendant added several basis points to the Cost of Funds as a result of the imposition by its parent company of a liquidity transfer pricing ("LTP") charge. Id. ¶ 5. Plaintiffs allege that Defendant used

4

the Cost of Funds to pass on to borrowers "the cost of funding

[Defendant's] parent's overhead and operations as a whole, not

just the cost of funding their own IMS loans." Id.

     In this action, Plaintiffs assert claims for breach of

contract and breach of an implied term limiting Defendant's

discretion to change the interest rate.[3] Id. at 17-21.  The

district court has previously determined that Hong Kong law

applies to the claims in this case.  See ECF No. 49 at 26 ("the

Court concludes that the facility agreements are governed by and

enforceable under the laws of Hong Kong").

     In the present Motion, Plaintiffs request that the

Court certify a class of plaintiffs to be defined as follows:

> All persons and entities who entered prior to
> August 2009 into an IMS loan with Lloyds that
> contained an interest rate provision based
> upon Lloyds' Cost of Funds and who are, or
> were at any time during entering into such an
> IMS loan, residents or citizens of the State
> of Hawaii, or owners of property in Hawaii
> that was mortgaged to secure any such IMS
> loan.[4]

---

[3] The district court granted Defendant's motion to dismiss
Plaintiffs' claim for declaratory judgment as an independent
cause of action.  ECF No. 73 at 34-36.  The district court held
that "[i]f this Court ultimately rules that Plaintiffs prevail on
their contractual claims, then such a ruling could provide any
appropriate declaratory relief or remedy." Id. at 36.

[4] Defendant asserts that Plaintiffs have changed their
definition of the proposed class.  ECF No. 167 at 10 n.1; see
also ECF No. 100 ¶ 40.  Although the wording of the class
definition in the Third Amended Complaint is slightly different
than that in the present Motion, Defendant does not argue, and
the Court does not find, that the change in wording is
significant or meaningful.  For purposes of this Motion, the
Court uses the class as defined in the Motion.

ECF No. 156-1 at 14.

<u>ANALYSIS</u>

Under Rule 23(a), a named plaintiff can obtain class certification if the Court finds: (1) numerosity of the class; (2) there are common questions of law or fact; (3) that the named plaintiff's claims and defenses are typical; and (4) that the representative parties can fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); <u>see</u> <u>also</u> <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2550 (2011).  These requirements are known as numerosity, commonality, typicality, and adequacy of representation.  <u>See</u> <u>Wal-Mart Stores, Inc.</u>, 131 S. Ct. at 2550.  If these four prerequisites of Rule 23(a) are met, the Court must next consider whether the class is maintainable under Rule 23(b).  <u>Narouz v. Charter Communs., LLC</u>, 591 F.3d 1261, 1266 (9th Cir. 2010).  In this case, Plaintiffs rely on Rule 23(b)(3) and 23(b)(2).  <u>See</u> ECF No. 156 at 24-30.  Under Rule 23(b)(3), a class can be certified if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Under Rule 23(b)(2), a class can be certified if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate

respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  The

court must conduct a rigorous analysis to determine whether all

of the prerequisites of Rule 23 have been met.  <u>Gen. Tel. Co. v.</u>

<u>Falcon</u>, 457 U.S. 147, 161 (1982); <u>see also</u> <u>Wal-Mart Stores, Inc.</u>,

131 S. Ct. at 2551.

### A.  Rule 23(a)

### 1.  Numerosity

The numerosity inquiry "requires examination of the

specific facts of each case and imposes no absolute limitations."

<u>Gen. Tel. Co. of the NW, Inc. v. E.E.O.C.</u>, 446 U.S. 318, 330

(1980).  In general, the numerosity requirement is presumed

satisfied when a class includes at least forty members.  <u>Rannis</u>

<u>v. Recchia</u>, 380 Fed. Appx. 646, 651 (9th Cir. 2010).  Here,

Plaintiffs assert that according to data produced by Defendant in

this litigation, there are more than one hundred and sixty loan

accounts that meet the class definition.  ECF No. 156-1 at 16;

ECF No. 155-55.[5]  In its Opposition, Defendant does not challenge

Plaintiffs' satisfaction of the numerosity requirement.  <u>See</u> ECF

---

[5] Plaintiffs attached to their Motion the anonymous data set
produced by Defendant that reflects the loan accounts that meet
the class definition proposed by Plaintiffs.  <u>See</u> ECF No. 155-55.
However, at the hearing on the Motion, Defendant's counsel stated
that the document filed by Plaintiffs only included the one
hundred and twenty-five "live" loans and did not reflect the
additional forty-four "closed" loans that also meet the proposed
class definition.  Defendant's counsel also noted that six of the
"closed" loans closed <u>before</u> August 2009.  Plaintiffs filed an
errata attaching the full data set on November 11, 2015.  ECF No.
316.

No. 167.  Because the numerosity requirement is presumed satisfied when a class is compromised of at least forty members, the Court concludes that this requirement is met.

### 2.  Commonality

Commonality requires the named plaintiffs to show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart Stores, Inc., 131 S. Ct. at 2551; see also Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012) (same).  These common questions may center on "shared legal issues with divergent factual predicates [or] a common core of salient facts coupled with disparate legal remedies."  Jimenez v. Allstate Ins. Co., 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998)).

As the district court previously stated, to prevail on a breach of contract claim under Hong Kong law, a plaintiff must establish (1) that there were express or implied contractual terms requiring the defendant to act in some manner and (2) that the defendant has acted contrary to those express or implied terms.  ECF No. 73 at 26-27 (citing Hongkong Fir Shipping Co. Ltd v. Kawasaki Kisen Kaisha, [1962] 2 QB (QB Div. 1962).

8

Contractual language is interpreted by "ascertain[ing] . . . the meaning which the document would convey to a reasonable person having all the background knowledge which would reasonably have been available to the parties in the situation in which they were at the time of the contract." Id. at 27 (quoting Investors Comp. Scheme Ltd. v. West Bromwich Bldg. Soc'y, [1998] 1 WLR 896 at 17).

Plaintiffs contend that their claims that Defendant breached the interest rate provision in the facility agreement by arbitrarily increasing the Cost of Funds to include the LTP and that Defendant breached an implied term limiting its discretion to change the Cost of Funds in good faith are "based on wholly common questions, subject to wholly common proof." ECF No. 156-1 at 19. As discussed in detail below, the Court finds that Plaintiffs have demonstrated that there are common questions of law and fact as to their breach of contract claim and their breach of an implied term claim.

### a. Breach of Contract Claim

First, Plaintiffs allege that Defendant breached the interest rate provision of the facility agreements by adding the LTP to the Cost of Funds component charged to Plaintiffs. Plaintiffs assert, and Defendant does not dispute, that all of the putative class members have facility agreements with the same Cost of Funds language. See ECF No. 156-1 at 21; ECF No. 167. Plaintiffs allege that Defendant breached this provision by

"arbitrarily increasing its Cost of Funds." ECF No. 100 ¶ 4. Specifically, Plaintiffs allege that starting in 2009 Defendant added several basis points to the Cost of Funds as a result of the imposition by its parent company of an LTP charge. Id. ¶ 5. Plaintiffs contend, and Defendant does not contest, that Defendant calculates the Cost of Funds component for the IMS loans at issue in an identical manner. ECF No. 156-1 at 18 (citing Defendant's Responses to Requests for Admissions Nos. 1 and 2); ECF No. 167. Because the Cost of Funds term is the same in all of the facility agreements and Defendant's calculation of the Cost of Funds component is the same for each of the putative class members' loans, the Court finds that the question of whether Defendant permissibly passed on the cost of the LTP charge to borrowers by including the charge in the Cost of Funds is sufficient to satisfy the commonality requirement for class certification.

The Court rejects Defendant's argument that Plaintiffs' breach of contract claim depends on "oral representations" and Plaintiffs' individualized "understanding" of the Cost of Funds provision. See ECF No. 167 at 29-32. Defendant argues that Plaintiffs' breach of contract claim is based on "oral representations" made to them by third parties regarding various market indexes. Id. at 30-31. However, the district court previously rejected this "strawman argument" and held that Plaintiffs' reference to different indexes is merely supporting

10

evidence that Defendant breached the Cost of Funds provision by passing on the LTP charge.  See ECF No. 73 at 29.

The Court also rejects Defendant's argument that an individualized examination of each borrower's knowledge at the time of the loans is required for the Court to interpret the terms of the facility agreements.  Using the language quoted by the district court in a prior order, Defendant's counsel argued at the hearing that under Hong Kong law, the Court is required to examine "the situation in which [the parties] were at the time of the contract."  See ECF No. 73 at 27.  Defendant's counsel's argument misconstrues the relevant legal standard.  The district court was quoting a decision from the United Kingdom House of Lords, Investors Compensation Scheme Ltd. v. West Bromwich Building Society, [1998] 1 WLR 896 at 17.  See id.  In that decision, the court expressly stated that the objective "reasonable person" standard for contract interpretation excludes "the previous negotiations of the parties and their declarations of subjective intent."  Investors Comp. Scheme Ltd., [1998] 1 WLR 896 at 17.  Accordingly, each borrower's subjective understanding or knowledge is not relevant to the task of ascertaining the meaning of contract terms.

Defendant also mischaracterizes this Court's prior order regarding joinder of Plaintiff Michele Sherie Dominick. See ECF No. 167 at 32.  The Court previously determined that

11

Plaintiffs' declaratory judgment claim was based on Plaintiffs' interpretation of the calculation of the interest rate.  See ECF No. 94 at 5-6.  However, that characterization did not apply to Plaintiffs' breach of contract claim, which is based on the undisputed terms of the facility agreements and Defendant's inclusion of the LTP charge in the Cost of Funds calculation. Id.  The Court finds that Defendant's arguments do not defeat Plaintiffs' demonstration of commonality.

However, the Court must address the choice-of-law provision in the facility agreements.  The district court has already ruled that the Hong Kong choice-of-law provision in Plaintiffs' facility agreements governs the claims in this action.  See ECF No. 49 at 26 ("the Court concludes that the facility agreements are governed by and enforceable under the laws of Hong Kong").  In its Opposition, Defendant represents that seventeen of the loans at issue contain choice-of-law provisions specifying application of Singapore law.  See ECF No. 167 at 46; ECF No. 167-1 ¶¶ 3-7.  Plaintiffs do not challenge this representation in their Reply and offered no contrary evidence at the hearing.  Because the loans that contain Singapore choice-of-law provisions would require application of different governing law, commonality is lacking as to these loans.  The Court is unpersuaded by Plaintiffs' counsel's argument at the hearing that commonality exists because both

12

Singapore and Hong Kong follow English common law.  Plaintiffs have presented no evidence to support this assertion and, even if that assertion were correct, none of the named Plaintiffs are asserting any claims under Singapore law, so there is a failure of typicality and adequacy as well.  The Court finds that any class that is to be certified must be limited to borrowers whose facility agreements contain a Hong Kong choice-of-law provision.

The Court finds that Plaintiffs have sufficiently demonstrated commonality for their breach of contract claim.

### b.  Breach of an Implied Term Claim

Second, regarding Plaintiffs' breach of an implied term claim, Plaintiffs allege that the facility agreements contain "[a]n implied term requiring [Defendant] to exercise any discretion it has to change the Cost of Funds component of the interest [rate] honestly and in good faith, and not for an improper purpose, capriciously or arbitrarily, having regard to the proper purpose and provision of the contract."  ECF No. 100 ¶ 70.  Plaintiffs claim that Defendant breached this alleged implied term by increasing the interest rate solely for Defendant's profit.  Id. ¶ 71.  As noted above, the Cost of Funds term is the same in all of the facility agreements and Defendant's calculation of the Cost of Funds component is the same for each of the putative class members' loans.

As recognized by the district court, "[u]nder Hong Kong

law, which includes English common law, courts do not read into every contract implied terms requiring parties to act in good faith." ECF No. 73 at 30 (citing Greenclose Ltd. v. National Westminster Bank, [2014] EWHC 1156 (Ch Div. 14 April 2014), at ¶ 150). In Greenclose, the court noted that "such a term is unlikely to arise by way of necessary implication in a contract between two sophisticated parties negotiating at arms' length." Greenclose Ltd., [2014] EWHC 1156 (Ch Div. 14 April 2014), at ¶ 150. Further, the court noted that "the implication of an obligation of good faith is heavily dependent on the context." Id. In Pacific Long Distance Telephone Corp. Ltd. v. New World Telecommunications Ltd., the court held that "[w]hether a term constraining the exercise of [one party's unfettered] discretion is to be implied depends upon the relevant factual circumstances." [2012] HCA 1688/2006 ¶ 38.

Defendant argues that Plaintiffs cannot meet the commonality requirements as to this claim because each borrower's sophistication must be examined to determine whether an implied term can be read into the relevant facility agreement. ECF No. 167 at 33-35. Plaintiffs argue that the only relevant factual circumstances here are that the relevant terms of the facility agreements were non-negotiable and that borrowers would not have been permitted to change the relevant language of the facility agreements drafted by Defendant. See ECF No. 177 at 11. Because

14

the Cost of Funds provision is identical across the entire class
and could not have been altered, Plaintiffs argue that a
borrower's "sophistication" is not relevant here.  Id.

     The Court agrees that the relevant factual
circumstances in determining whether an implied term should be
read into the facility agreements are common across the class.
Defendant relies heavily on the court's holding in Greenclose,
where the court noted that "such a term is unlikely to arise by
way of necessary implication in a contract between two
sophisticated parties negotiating at arms' length."  See ECF No.
167 at 34.  However, even if the borrowers are determined to be
"sophisticated parties," Defendant does not argue that these
facility agreements were "negotiat[ed] at arms' length."  See id.
Rather, Plaintiffs have demonstrated that the relevant terms of
the facility agreements were non-negotiable and that borrowers
would not have been permitted to change the relevant language
drafted by Defendant.  See ECF No. 177 at 11.  Based on the
foregoing, the Court finds that the claim for breach of an
implied term depends on common contentions.  Furthermore, the
truth or falsity of the common contentions will likely resolve
issues that are central to the validity of the class members'
claims in one stroke.  Accordingly, the Court finds that the
commonality requirement is satisfied.

### 3.   Typicality

The typicality requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." <u>Rodriguez v. Hayes</u>, 591 F.3d 1105, 112 ¶ 1 (9th Cir. 2010) (citation omitted).  Under this standard, the class representatives' claims need only be "reasonably coextensive with those of absent class members;" they need not be "identical or substantially identical to those of the absent class members." <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).  The Ninth Circuit has held that the typicality requirement is <u>not</u> met if "a putative class representative is subject to unique defenses which threaten to become the focus of the litigation" and "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."  <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992) (quoting <u>Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 903 F.2d 176, 180 (2d Cir. 1990), <i>cert. denied</i>, 498 U.S. 1025 (1991)).

Here, Plaintiffs assert that their claims and the claims of the proposed class members all arise from the Cost of Funds provisions in the facility agreements and Defendant's common course of conduct with regard to the language in those

provisions.  See ECF No. 156-1 at 20.  Defendant argues that Plaintiffs' typicality is undermined by the numerous breaches of Plaintiffs' contractual obligations and failures to perform.  See ECF No. 167 at 35.  Specifically, Defendant argues that Plaintiffs are not typical because all Plaintiffs are in breach of the loan-to-value ("LTV") provisions in their IMS loans and remain in breach to date and the Dominicks have also breached several other provisions.  Id. at 35-37.

### a. Loan-to-Value Provisions

According to Defendant, all IMS loans are issued subject to an express LTV ratio, which is seventy-five percent for each of Plaintiffs' loans.  ECF No. 167 at 20.  If the LTV ratio is exceeded, Defendant can require borrowers to restore the ratio by providing added security and/or cash deposits.  Id.

As to Dr. Willcox, Defendant informed Dr. Willcox in October 2008, that his loans exceeded their LTV ratio.  ECF No. 167 at 26; ECF No. 167-37.  According to Defendant, Dr. Willcox delayed addressing this issue until July 2009, at which time Dr. Willcox agreed to increase his quarterly payments to restore the ratio.  ECF No. 167 at 26; ECF Nos. 167-38, 137-39, 137-41.  Defendant asserts that it contacted Dr. Willcox again in 2010 and 2012 to seek additional payments restore the LTV ratio.  ECF No. 167 at 26-27; ECF Nos. 167-42, 167-43, 167-44.  Plaintiffs acknowledge that Dr. Willcox's loans exceeded the LTV provision,

but contend that he and Defendant agreed to a payment plan to bring his loan into LTV compliance.  See ECF No. 177 at 14-15. Plaintiffs submitted Dr. Willcox's recent loan statements, which reflect that none of Dr. Willcox's loans had a LTV ratio higher than sixty-five percent.  See ECF No. 177-4, loan statements dated 5/28/15.  Based on the evidence before the Court, it does not appear that Dr. Willcox is currently in breach of the LTV provision of his facility agreements.

As to the Dominicks, Defendant asserts that it informed the Dominicks that their loans exceeded the LTV ratio in December 2008.  ECF No. 167 at 20.  Defendant contends that Mr. Dominick agreed to a lump sum deposit of $250,000 to bring the LTV ratio into compliance, but did not make any payment on that agreement until March 2010, and at that time made only a deposit of $100,000.  Id.; ECF Nos. 167-19, 167-20, 167-27.  Defendant repeatedly requested the remaining $150,000 deposit.  See ECF Nos. 167-8, 167-22, 167-23.  Plaintiffs also acknowledge the Dominicks' prior LTV ratio violations, but submitted recent loan statements, which reflect that LTV ratios of sixty-six and sixty-nine percent, also below the approved ratio of seventy-five percent.  See ECF No. 177-5, loan statements dated 3/19/15. Based on the evidence before the Court, it does not appear that the Dominicks are currently in breach of the LTV provision of their facility agreements.

18

Although the Plaintiffs previously were in violation of the LTV ratio, Plaintiffs argue that this is not a basis for finding that Plaintiffs' claims are not typical.  ECF No. 177 at 14.  Plaintiffs argue that given the drop in the Yen-Dollar exchange rate, it is likely that many class members had LTV ratio issues, which supports a finding of typicality because this defense is not "unique" to the Plaintiffs.  Id. at 14-15.

### b.  Additional Provisions

Defendant does not allege that Dr. Willcox breached any other provisions of the facility agreements.  See ECF No. 167 at 26-27.  However, Defendant asserts that the Dominicks breached several additional provisions of the facility agreements.  Id. at 16-22.  Specifically, Defendant contends that the Dominicks have repeatedly violated contract terms regarding borrower occupancy and relocation, prohibitions on unilateral property transfer, insurance requirements, and payment obligations.  ECF No. 167 at 37.  Defendant argues that these breaches disqualify Plaintiffs on the basis of typicality.  Id.

First, the facility agreements provide that the premises are for investment purposes and are not to be "occupied by the Borrower or his family members."  See ECF No. 167-3 at 3; 167-4 at 3.  Dr. Dominick testified at her deposition that the Dominicks stayed in one of the properties for an unspecified amount of time during 2006 to 2008 while the property was being

renovated.  ECF No. 167-6 at 24-25.  Additionally, Dr. Dominick testified that they stayed at the property for weeks during holidays and allowed family members to also stay there.  Id. at 26-27.  Mr. Dominick also testified at his deposition that one of the properties is rented to Dr. Dominick's brother, who then subleases the property to another individual or entity.  See ECF No. 167-5 at 33-24.  Second, the facility agreements also require the Dominicks to immediately notify Defendant if they intend to take up residence in the United States.  See ECF No. 156-11 at 2. Defendant asserts that the Dominicks never informed Defendant that they relocated to the United States in 2007.  ECF No. 167 at 18.  Third, Defendant asserts that the Dominicks breached the agreements by transferring both properties to a family trust. Id.  The facility agreements prohibit transfer without Defendant's prior written consent.  See ECF No. 156-11 at 8. Fourth, Defendant also asserts that the Dominicks failed to maintain the required insurance on their properties.  See ECF No. 167-15, 167-16, 167-17.  Finally, Defendant contends that the Dominicks regularly missed their quarterly interest payment due dates.  ECF No. 167 at 22.  Defendant asserts that the Dominicks fell into arrears from January 2011 to June 2013.  Id.; ECF Nos. 167-26, 167-27.

Plaintiffs do not contest these facts, but argue that these breaches are not material and therefore, should not defeat

typicality.  See ECF No. 177 at 16-17.  Plaintiffs contend that Defendant has not pointed to any defense that would excuse its allegedly improper interest rate increases.  Id.

After considering the evidence presented, the Court finds that the typicality requirement is satisfied as to Dr. Willcox.  Although Dr. Willcox's LTV ratio exceeded the permissible ratio in the past, the evidence presented by Plaintiffs shows that Dr. Willcox took action, with the approval of Defendant, to bring his loans back into ratio compliance and shows that his loans are currently within the acceptable ratio. There is no indication that Dr. Willcox will be subject to unique defenses that threaten to become the focus of the litigation. See Hanon, 976 F.2d at 508.  However, as to the Dominicks, the Court finds that Plaintiffs have failed to demonstrate that the Dominicks' claims are typical of the class given the numerous uncontested breaches of the facility agreements.  The Court finds that the Dominicks' unique factual circumstances regarding their purported breaches of their IMS loans "require [them] to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class."  See Hanon, 976 F.2d at 508.  Accordingly, the Court finds that Plaintiffs have failed to satisfy the typicality requirements as to the Dominicks' claims.

### 4.  Adequacy of Representation

Courts must ask two questions in determining whether the named plaintiffs will fairly and adequately protect the interests of the class:  "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Staton, 327 F.3d at 957 (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).  This requirement is satisfied if one of the class representatives is an adequate class representative.  Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 n.2 (9th Cir. 2001).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).  Aside from the issues addressed in the discussion of typicality above, Defendant does not raise any additional issues regarding Dr. Willcox's adequacy as a class representative.  See ECF No. 167.

Regarding Mr. Dominick, Defendant argues that he is not an adequate class representative because of his purported lack of candor before the Court.  Id. at 37.  Defendant asserts that Mr. Dominick misrepresented his place of residence to the court for purposes of avoiding dismissal.  Id. at 37-38.  Plaintiffs argue

that this assertion is baseless and that Mr. Dominick has been
candid with the court regarding his place of residence.  ECF No.
177 at 17.  For purposes of this Motion, the Court need not
resolve this issue because the question of Mr. Dominick's
residency is not directly relevant to claims in this litigation.
Although his residency was considered by the court in resolving a
prior motion, it is not a central issue to Plaintiffs' claims for
breach of contract.  Credibility is a "relevant consideration
with respect to the adequacy analysis"; however, to show that a
class representative is not adequate, credibility must relate to
"issues directly relevant to the litigation" or there must be
"confirmed examples of dishonesty, such as a criminal conviction
for fraud."  Harris v. Vector Mktg. Corp., 753 F. Supp. 2d 996,
1015 (N.D. Cal. 2010) (citation omitted); see also Del Campo v.
American Corrective Counseling Servs., Inc., No. C 01-21151 JW
(PVT), 2008 WL 2038047, at *4 (N.D. Cal. May 12, 2008) (stating
that "generally, unsavory character or credibility problems will
not justify a finding of inadequacy unless related to the issues
in the litigation" (quoting Byes v. Telecheck Recovery Servs.,
Inc., 173 F.R.D. 421, 427 (E.D. La. 1997))).  Because the
credibility issues noted by Defendant are not related to the
claims in this litigation and there is no indication of confirmed
examples of dishonesty, the Court does not find that Mr. Dominick
is an inadequate representative based on his purported lack of

candor regarding his place of residency.

Defendant argues that Dr. Dominick is not an adequate representative because she did not voluntarily join this case and attempted to divest herself of any rights pertaining to her IMS loan to avoid joinder.  ECF No. 167 at 38.  Defendant also argues that Dr. Dominick is an inadequate class representative because she stated during her deposition that she did not have knowledge of the lawsuit and did not participate in responding to discovery.  Id. at 38-39.  Other courts have held that "class representative status may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys."  Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 61 (2d Cir. 2000) (internal quotation omitted).  Although Dr. Dominick has stated that she has limited knowledge and involvement in the case, there is nothing in the record to suggest that she is unable or unwilling to protect the interests of the class against the interests of the attorneys.  See id.

Finally, Defendant does not dispute the adequacy of Plaintiffs' counsel.  See ECF No. 167.  Plaintiffs' counsel has significant experience acting as class counsel in similar cases against Defendant.  In this case, Plaintiffs' counsel has worked

to identify and investigate the claims and have represented their clients vigorously and effectively.

Plaintiffs have diligently litigated this action to date.  Plaintiffs and Plaintiffs' counsel do not appear to have any conflict that would preclude them from representing the class, and Plaintiffs' counsel has extensive experience with these types of cases.  Accordingly, the Court finds that Plaintiffs have met the adequacy of representation requirement.

In conclusion, the Court finds that Plaintiffs have demonstrated numerosity, commonality as to facility agreements that contain a Hong Kong choice-of-law provision, typicality as to Dr. Willcox, and adequacy of representation.

### B.  Rule 23(b)

Because the Court has found that Plaintiffs have met the four threshold requirements for class certification, as detailed above, the Court must now consider whether the requirements of Rule 23(b) are also met.  Plaintiffs argue that the proposed class meets the requirements of Rule 23(b)(3) for both their claims for monetary damages and injunctive relief.  ECF No. 156 at 24-28.  Alternatively, Plaintiffs ask the Court to certify a subclass related to their request for injunctive relief under Rule 23(b)(2).  Id. at 28-30.

### 1. Rule 23(b)(3)

Rule 23(b)(3) presents two additional requirements for

25

certification:  predominance and superiority.  <u>Yokoyama v.
Midland Nat'l Life Ins. Co.</u>, 594 F.3d 1087, 1090 n.1 (9th Cir.
2010); <u>Poulos v. Caesars World, Inc.</u>, 379 F.3d 654, 664 (9th Cir.
2004).

### a. Predominance

"The predominance inquiry of Rule 23(b)(3) asks
'whether proposed classes are sufficiently cohesive to warrant
adjudication by representation.'" <u>In re Wells Fargo Home Mortg.
Overtime Pay Litig.</u>, 571 F.3d 953, 957 (9th Cir. 2009) (quoting
<u>Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las
Vegas Sands, Inc.</u>, 244 F.3d 1152, 1162 (9th Cir. 2001)).  Unlike
Rule 23(a)(2), the predominance requirement does not look at the
mere existence of common issues.  Rather, the common issues must
be "a significant aspect of the case and they [must] be resolved
for all members of the class in a single adjudication." <u>Las
Vegas Sands</u>, 244 F.3d at 1162 (citation omitted).

Here, as detailed in the commonality discussion above,
there are significant factual issues regarding the Cost of Funds
provision that are common to the class.  The putative class
members all have loans with the same interest rate definition.
<u>See</u> ECF No. 156-1 at 25.  Defendant's practice regarding
increasing the interest charged to the class members is common to
all class members.  <u>Id.</u>  Plaintiffs acknowledge that the amount
of damages incurred by each borrower will be different, but

assert that the method of calculating each class members' damages is common. Id. The Court finds that the key legal issues, including whether Defendant permissibly passed on the cost of the LTP charge to borrowers by including the charge in the Cost of Funds and whether a term limiting Defendant's discretion should be implied into the facility agreements, are also common to the members of the proposed class. The Court can resolve these issues for all class members in a single action. The Court concludes that the predominance factor is satisfied for a class that is limited to borrowers whose loan documents contain a Hong Kong choice-of-law provision.

### b. Superiority

Rule 23(b)(3) sets forth a non-exhaustive list of factors that courts should consider in determining superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

First, Plaintiffs contend that class members have minimal interest in individually controlling the prosecution of

27

these claims in separate actions because of the common legal and factual issues that are present.  See ECF No. 156-1 at 27. Second, Plaintiffs assert that there are no other actions pending asserting the class claims against Defendant on behalf of the proposed class in this action.  Id. at 27.  Third, Plaintiffs argue that the court has already determined that Hawaii is the proper venue for this litigation.  Id.  Defendant does not challenge Plaintiffs' assertions regarding these three factors. See ECF No. 167.  However, Defendant contends that the fourth factor regarding management of the class weighs heavily against a finding of superiority.

Defendant argues that a class action would not be superior because the proposed class would be subject to the difficulties presented by a significant proportion of class members that may be subject to a foreign jurisdiction.  See ECF No. 167 at 40.  Specifically, Defendant contends that "a preponderance of the loan agreements in Plaintiffs' proposed class are potentially subject to foreign jurisdictions, many of which would not grant res judicata effect to this Court's judgment."  ECF No. 167 at 35-37.  As noted above, the putative class includes "[a]ll persons and entities . . . who are, or were at any time during entering into such an IMS loan, residents or citizens of the State of Hawaii, or owners of property in Hawaii that was mortgaged to secure any such IMS loan."  ECF No. 156-1

at 14. Defendant contends that the putative class members include United States nationals who reside abroad, foreign nationals who reside in the United States and/or abroad, and owners of subject property outside of the United States. See ECF No. 167 at 42-43. Because of these "indicia" of potential non-United States jurisdiction, Defendant argues that Plaintiffs must demonstrate that the foreign jurisdictions at issue would honor any judgment from this court. Id. at 42-45.

Although the issue has not been addressed by the Ninth Circuit, other federal district courts have held that "[c]ourts may properly consider res judicata concerns when evaluating the Superiority Requirement with respect to a proposed class that includes foreign class members." In re Alstom SA Sec. Litig., 253 F.R.D. 266, 281 (S.D.N.Y. 2008). The Court finds that any res judicata concerns are speculative, at best. First, based on the evidence presented by Plaintiffs, it appears that most of the putative class members are United States citizens. See ECF No. 156-55 at 6-7. Accordingly, the number of foreign putative class members is limited. Although Defendant presents evidence regarding "non-U.S. indicia" that "may" subject certain class members to foreign jurisdictions, Defendant does not provide any authority for its arguments regarding consideration of these "indicia." Rather, the cases cited by Defendant examine the nationality of the potential class members in considering res

29

judicata.  Based on Plaintiffs' representations regarding the nationality and residency of the putative class, it appears that class litigation is the superior method of resolving this dispute because the court's judgment would be enforceable in the United States by an overwhelming majority of putative class members. See In re Lloyd's Am. Trust Fund Litig., No. 96 Civ. 1262, 1998 WL 50211, at *15 (S.D.N.Y. Feb. 6, 1998) ("The significant number of United States Names alone would be sufficient to find that a class action is 'superior to other available methods for the fair and efficient adjudication of the controversy' as required by Rule 23(b)(3)."). Defendant has not presented any other arguments regarding manageability. The Court finds that all of the factors to be considered weigh in favor of certifying the proposed case as limited by the Court.  Although there may be minor issues regarding manageability of foreign class members, the Court does not find that these minor issues will present any undue difficulties in managing the instant case as a class action.  Accordingly, the Court concludes that the superiority requirement is satisfied.

In this action, Plaintiffs assert class action claims for both monetary damages and injunctive relief.  See ECF No. 100 ¶ 52.  Although separate certification is permissible under Rule 23(b)(2) for injunctive relief, Defendant does not object to Plaintiffs' request to include the requested injunctive relief as

part of the class certified under Rule 23(b)(3).  See ECF No. 1561 at 28-29; ECF No. 167.  Because Plaintiffs have satisfied both the predominance and superiority requirements, the Court finds that class certification under Rule 23(b)(3) is appropriate as detailed below.

                              CONCLUSION

        In accordance with the foregoing, the Court FINDS AND RECOMMENDS that Plaintiffs' Motion for Class Certification be GRANTED IN PART AND DENIED IN PART as follows:

        (1) The Court CERTIFIES the instant case as a class action;

        (2) The Court CERTIFIES the following class:  All persons and entities who entered prior to August 2009 into an IMS loan with Lloyds that contained a Hong Kong choice-of-law provision and an interest rate provision based upon Cost of Funds and who are, or were at any time during entering into such an IMS loan, residents or citizens of the State of Hawaii, or owners of property in Hawaii that was mortgaged to secure any such IMS loan;

        (3) The Court APPOINTS Bradley Willcox as the class representative;

        (4) The Court APPOINTS Alston Hunt Floyd & Ing and Steptoe & Johnson LLP as class counsel;

        (5) The Court ORDERS the parties to meet and confer no

later than 30 days after the district court acts on this Findings and Recommendation to agree on: the proposed notice to potential class members pursuant to Rule 23(d)(2) and the most practicable procedure under the circumstances to provide notice of the instant case to those class members. The proposed notice to the class and the proposed distribution plan shall be submitted for the Court's approval no later than 45 days after the district court acts on this Findings and Recommendation; and

      (6) The Court DENIES the remaining relief requested in Plaintiffs' Motion for Class Certification.

      IT IS SO FOUND AND RECOMMENDED.

      DATED AT HONOLULU, HAWAII, NOVEMBER 12, 2015.

Richard L. Puglisi
United States Magistrate Judge

**WILLCOX, ET AL. V. LLOYDS TSB BANK PLC, ET AL.**, CIVIL NO. 13-00508 ACK-RLP; FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION