IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

———————————————————————————

BRADLEY WILLCOX, FRANK DOMINICK,   )
and MICHELE SHERIE DOMINICK,       )
                                   )
                Plaintiffs,        )
                                   )
v.                                 )  Civ. No. 13-00508 ACK-RLP
                                   )
LLOYDS TSB BANK, PLC and DOES      )
1-15,                              )
                                   )
                Defendants.        )
———————————————————————————

## ORDER ADOPTING IN PART, REJECTING IN PART, AND MODIFYING IN PART THE FINDINGS AND RECOMMENDATIONS TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

        For the reasons set forth below, the Court ADOPTS in part, REJECTS in part, and MODIFIES in part the Findings and Recommendations to Grant in Part and Deny in Part Plaintiffs' Motion for Class Certification, ECF No. 317, issued by Magistrate Judge Puglisi in the instant case on November 12, 2015.

### PROCEDURAL BACKGROUND

        The operative Third Amended Complaint ("TAC") was filed in this case on March 27, 2015.  ECF No. 100.  The TAC names Frank and Michele Sherie Dominick (hereinafter, "the Dominicks") and Bradley Willcox (collectively, "Plaintiffs") as representatives for this putative class action against Defendant Lloyds TSB Bank, PLC, now known as Lloyds Bank PLC ("Lloyds" or

1

"Defendant"). Id.; see also Compl., ECF No. 1-2.[1] Plaintiffs' TAC bring claims for Breach of Contract (Count I) and Breach of an Implied Term Limiting Lloyds' Discretion to Change the Interest Rate (Count II) related to certain dual currency loans described in greater detail below. See TAC ¶¶ 55-72, ECF No. 100.

On July 15, 2015, Plaintiffs filed a Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23. ECF No. 156. A hearing was held on the motion on November 10, 2015. ECF No. 315. Magistrate Judge Puglisi issued his Findings and Recommendations to Grant in Part and Deny in Part Plaintiffs' Motion for Class Certification ("F&R") on November 12, 2015. ECF No. 317.

The F&R recommends: (1) certifying the instant case as a class action, (2) defining the certified class as:

> "All persons and entities who entered prior to August 2009 into an IMS [International Mortgage System] loan with Lloyds that contained a Hong Kong choice-of-law provision and an interest rate provision based upon Cost of Funds and who are, or were at any time during entering into such an IMS loan, residents or

---

[1] Class action suits involving similar loan products and claims as those at issue in the instant case were filed against Lloyds in federal district courts in California and Washington: (1) Dugan v. Lloyds TSB Bank, Civ. No. 3:12-cv-02549-WHA (N.D. Cal.); (2) Osmena v. Lloyds TSB Bank, Civ. No. 3:12-cv-02937-WHA (N.D. Cal.) (since consolidated with Dugan); and (3) Washington Land Development, LLC v. Lloyds TSB Bank plc, 2:14-cv-00179-JCC (W.D. Wash.). Each of these cases has been dismissed following settlement.

citizens of the State of Hawaii, or owners of property in Hawaii that was mortgaged to secure any such IMS loan,"

(3) appointing Willcox (but not the Dominicks) as class representative, (4) appointing Alston Hunt Floyd & Ing and Steptoe & Johnson LLP as class counsel, (5) directing the parties to meet and confer regarding notice to class members, and (6) denying any remaining relief requested in Plaintiffs' class certification motion.  F&R at 31-32, ECF No. 317.

On November 25, 2015, Lloyds filed its Objections to Findings and Recommendations to Grant in Part and Deny in Part Plaintiffs' Motion for Class Certification ("Obj.").  ECF No. 332.  On the same date, Lloyds also filed a Notice of Intent to Rely on Foreign Law pursuant to Federal Rule of Civil Procedure 44.1, which attached a legal expert declaration and supporting authorities regarding Japanese law.  ECF No. 331.

On December 9, 2015, Plaintiffs filed their Response to Obj. ("Response").  ECF 335.  On the same date, Plaintiffs also filed a Notice of Intent to Rely on Foreign Law pursuant to Federal Rule of Civil Procedure 44.1, which attached a legal expert declaration and supporting authorities regarding Japanese law.  ECF No. 334.

On December 17, 2015, Lloyds filed a Motion for Leave to File Reply *Instanter* in Support of Obj., ECF No. 337, which attached its Reply in Support of Obj. ("Reply"), ECF No. 337-1.

On the same day, Lloyds also filed an additional Notice of Intent to Rely on Foreign Law pursuant to Federal Rule of Civil Procedure 44.1, which attached a legal expert declaration and supporting authorities regarding Japanese law.  ECF No. 336.  The Court granted Lloyds' motion for leave by Minute Order of December 17, 2015 and permitted Plaintiffs to file a sur-reply by December 28, 2015.  See Minute Order, ECF No. 339.  Plaintiffs filed their Sur-Reply to Reply ("Sur-Reply") on December 28, 2015.  ECF No. 340.

The Court notes that the parties also have cross-motions for summary judgment pending, which were filed on October 16, 2015 (prior to the issuance of the F&R).[2]  Those motions are set for a hearing on January 19, 2016.

## FACTUAL BACKGROUND

The instant case involves the issuance by Lloyds of dual currency, or International Mortgage System ("IMS"), loans.  IMS loans are mortgage loans with a currency switching feature that allows borrowers to switch the currency of their loans between U.S. dollars and other currencies.  See TAC ¶¶ 1-3, ECF No. 100.

---

[2]Specifically, Lloyds moves for summary judgment as to both of Plaintiffs' Counts I and II.  Def. Lloyds' Mot. for Summary Judgment, ECF No. 249.  Plaintiffs move for summary judgment only as to their Count I and request "immediate declaratory relief" as to that claim.  Plfs.' Mot. for Partial Summary Judgment on Their and the Putative Class's Claim for Breach of Contract at 1, ECF No. 251.

Lloyds is organized under the laws of the United Kingdom but maintains branches throughout the world, including a branch in Hong Kong, from which it issued IMS loans to Plaintiffs.  See id.  Lloyds is a wholly-owned subsidiary of Lloyds Banking Group, PLC ("LBG").  Id. ¶ 9.

## I.  The "Cost of Funds" Provision in Lloyds' IMS Loans

The IMS loans at issue in this case were issued by Lloyds from approximately 2005-2009 and secured by mortgages on real property in Hawaii and California.  Id. ¶¶ 15, 21-22, 28-30. The loans have an interest rate that is set at 1.5% above Lloyds' "Cost of Funds," with the interest rate fixed for successive three month periods.  Id. ¶¶ 2, 16.  The "Cost of Funds" is defined (with immaterial differences) in the loan documents as:

> [T]he cost (calculated to include the costs of complying with liquidity and reserve asset requirements) in respect of any currency expressed as a percentage rate of funding for maintaining the Advance or Advances in that currency as conclusively nominated by the Bank from time to time.

Id. ¶ 2.  Interest payments on the loans are due, and the interest rate recalculated, at the end of each three month period.  Id. ¶ 16.  Plaintiffs' claims for breach of contract and breach of an implied contractual term relate to whether Lloyds impermissibly included in its Cost of Funds certain charges imposed by its parent starting in 2009.  Id. ¶¶ 55-72.

5

## II.   The Named Plaintiff's Loans[3]

Plaintiff Bradley Willcox[4] is a resident of Hawaii[4] who, in 2007, took out approximately $1,284,500.00 in four IMS loans from Lloyds, secured by four real properties located in Honolulu, Hawaii.  Id. ¶¶ 6, 21-22.  Willcox took out the loans in U.S. Dollars but chose to redenominate them to Japanese Yen shortly after the transaction closed.  Id. ¶ 23.

Shortly thereafter, the exchange rate fell (i.e., the Yen grew stronger relative to the U.S. Dollar), and Willcox's quarterly interest payments "dramatically increased" by 2012. Id. ¶ 24.  Willcox alleges that this increase was, in part, a result of Lloyds' "arbitrary increases" in its Cost of Funds. Id. ¶ 25.  He further alleges that he is not in arrears on his

---

[3]As noted above, the TAC proposed two additional class representatives: Frank and Michele Sherie Dominick.  TAC at ¶¶ 7-8, ECF No. 100.  The Dominicks took out two IMS loans from Lloyds in 2007, which were denominated in Yen and secured by property in Hawaii and California.  Id. ¶¶ 28-30.  Like Willcox, the Dominicks found their interest rates increased after the Yen-U.S. Dollar exchange rate fell.  Id. ¶¶ 32-33.

As discussed below, the F&R did not certify the Dominicks as class representatives, and no party has challenged that finding.

[4]Willcox's current citizenship is not specified in the TAC. A filing by Lloyds indicated previously that Willcox is a Canadian citizen.  See Mem. in Support of Mot. to Dismiss at 6, ECF No. 62-1.  The Court notes that a November 24, 2014 declaration filed by Willcox previously indicated that he is a Canadian citizen with Permanent Resident status in the U.S., and that he planned to "apply[] for citizenship in 2015." Declaration of Bradley Willcox ¶¶ 4-5, 29, ECF No. 68-12.  The Court is unsure of his current citizenship but will presume that he is a Canadian citizen, absent any evidence to the contrary.

IMS loans and that Lloyds' Cost of Funds increases caused him to pay "substantially more" than he otherwise would have over the course of his loans.  Id. ¶¶ 26-27.

### III. Allegations Regarding Lloyds' Cost of Funds

Plaintiffs claim that, in or around 2009, Lloyds added several new basis points to its Cost of Funds calculation in order to reflect the imposition by its parent company, LBG, of a "liquidity transfer pricing" ("LTP") charge.  Id. ¶ 5.

According to Plaintiffs, the LTP charge added to the Cost of Funds an amount "based not on the actual cost of funds for the Loans, but for Lloyds' parent's significantly longer-term set of obligations."  Plaintiffs argue that this represented Lloyds' attempt to pass on to borrowers "the cost of funding Lloyds' parent's overhead and operations as a whole, not just the cost of funding their own IMS Loans."  Id. ¶ 5 (emphasis in original omitted).  Plaintiffs further observe that, during the period when Lloyds was increasing its Cost of Funds, standard interest rate indices such as the London Inter-Bank Offered Rate ("LIBOR") decreased.  Id.  ¶ 4.

Plaintiffs allege that Lloyds' inclusion of the LTP charge in its Cost of Funds constitutes a breach of the express terms of Plaintiffs' loan agreements and a breach of an implied term limiting Lloyds' discretion to change Plaintiffs' interest rates.  See id. ¶¶ 55-72.  The Court previously concluded that

7

these claims are governed by Hong Kong law.   Order Granting
Def.'s Mot. to Dismiss at 26, ECF No. 49.

## STANDARD

### I.   Review of Findings and Recommendations

When a party objects to a magistrate judge's findings
or recommendations, the district court must review de novo those
portions to which the objections are made and "may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge."  28 U.S.C.
§ 636(b)(1); see also United States v. Raddatz, 447 U.S. 667, 673
(1980); United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th
Cir. 2003) (en banc) ("[T]he district judge must review the
magistrate judge's findings and recommendations de novo if
objection is made, but not otherwise." (emphasis omitted)).

Under a de novo standard, a district court reviews "the
matter anew, the same as if it had not been heard before, and as
if no decision previously had been rendered."  Freeman v.
DirecTV, Inc., 457 F.3d 1001, 1004 (9th Cir. 2006) (citation
omitted); see also United States v. Silverman, 861 F.2d 571, 576
(9th Cir. 1988).  The district court need not hold a de novo
hearing; however, it is the court's obligation to arrive at its
own independent conclusion about those portions of the magistrate
judge's findings or recommendation to which a party objects.
United States v. Remsing, 874 F.2d 614, 616 (9th Cir. 1989).  It

8

is within the district court's discretion to "receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions."  Local Rule 74.2.

"[I]n providing for a 'de novo determination' rather than de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations."  Raddatz, 447 U.S. at 676 (citation omitted).  Pursuant to Local Rule 74.2, this Court "may consider the record developed before the magistrate judge," but the Court must make its "own determination on the basis of that record."

## II.  Class Certification Under Fed. R. Civ. P. 23

Under Federal Rule of Civil Procedure ("Rule") 23(a), a named plaintiff can obtain class certification if the Court finds: (1) numerosity of the class; (2) that there are common questions of law or fact; (3) that the named plaintiff's claims and defenses are typical; and (4) that the representative parties can fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); see also Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011).  These requirements are referred to as numerosity, commonality, typicality, and adequacy requirements.  Wal-Mart Stores, 131 S. Ct. at 2550.

If these four prerequisites are met under Rule 23(a), the Court must next consider whether the class can be maintained

under Rule 23(b).  <u>Narouz v. Charter Commc'ns, LLC</u>, 591 F.3d 1261, 1266 (9th Cir. 2010).  As relevant to the instant F&R, Rule 23(b)(3) provides that a class may be certified "if questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These requirements are referred to as predominance and superiority.  <u>Yokoyama v. Midland Nat'l Life Ins. Co.</u>, 594 F.3d 1087, 1090 n.1 (9th Cir. 2010).

As the party seeking class certification, it is Plaintiffs' burden to demonstrate that the requirements of Rules 23(a) and 23(b) are met.  <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule 23 does not set forth "a mere pleading standard;" rather, it requires Plaintiffs to "prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation" and to provide "evidentiary proof [of] at least one of the provisions of Rule 23(b)."  <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426, 1432 (2013) (citations omitted, emphasis in original).

## <u>DISCUSSION</u>

As a preliminary matter, the Court observes that certain elements of the F&R are uncontested by any party.

Specifically, there have been no objections to: (1) the appointment of Alston Hunt Floyd & Ing and Steptoe & Johnson LLP as class counsel, (2) the direction to meet and confer regarding notice to class members, (3) the exclusion from the class of loans with a Singapore (rather than Hong Kong) choice-of-law clause, and (4) the rejection of the Dominicks as representative plaintiffs, on the grounds that they lack typicality with the class. See Reply at 2, ECF No. 335. The district court reviews only those portions of the F&R to which the parties object. Local Rule 72.4; see also 28 U.S.C. § 636(b)(1)(C); F&R at 1 n.1, ECF No. 317. Accordingly, the Court AFFIRMS the foregoing uncontested portions of the F&R.[5]

   Lloyds raises three primary objections to the F&R: (1) the proposed class allegedly lacks commonality and predominance under Rules 23(a) and 23(b)(3) as to Plaintiffs' express and implied breach of contract claims, (2) the proposed class allegedly lacks superiority under Rule 23(b)(3), because it would include borrowers whose loan accounts show "non-U.S. indicia" (suggesting that a class judgment may not have preclusive effect

---

[5]Plaintiffs suggest in the Sur-Reply that "Lloyds is incorrect that Plaintiffs agree with the F&R insofar as it excludes Singapore loans and finds the Dominicks as atypical and/or inadequate representatives . . . Plaintiffs chose not to object to the F&R" as to these points. Sur-Reply at 4 n.4, ECF No. 340.
   Because (as stated above) the Court reviews only those portions of the F&R to which there are objections, Plaintiffs' choice not to object to these findings effectively concedes them.

in foreign jurisdictions), and (3) named Plaintiff Willcox allegedly is not a typical or adequate representative of the class under Rule 23(a).  See Obj. at 2-3, ECF No. 332. Plaintiffs, for their part, urge that the F&R should be "affirmed in its entirety."  Response at 5, ECF No. 335.[6]

The Court examines Lloyds' objections in turn below.

## I.   Commonality and Predominance of Plaintiffs' Claims

The Court ADOPTS the F&R's findings that Rule 23's commonality and predominance requirements are met as to both of Plaintiffs' claims for breach of contract and breach of an implied contractual term.  See F&R at 8-15, 26-27, ECF No. 317.

The commonality requirement of Rule 23 requires

---

[6]Lloyds also objects that two additional individual exclusions from the proposed class are necessary.  One is required for Jason Ray, whose loan is evidently implicated in the instant case but was previously included in the Dugan settlement. See Obj. at 17 n.10, ECF No. 332.  The second relates to a "base rate" loan listed in an anonymized data set purporting to list the class members.  This base rate loan's interest is tied directly to the British Pound and does not implicate the Cost of Funds calculation at issue in this case.  Id. at 36-37.

Plaintiffs did not respond to these objections until filing their Sur-Reply, in which they state simply that they "do not concede exclusion of the base-rate and Ray Loans as Plaintiffs are not required to reply to any of Lloyds' objections."  Sur-Reply at 4 n.4, ECF No. 340.

In view of Plaintiffs' limited response, the Court finds both of Lloyds' individual exclusions appropriate.  Lloyds has articulated reasonable concerns as to the inclusion of these loans in the class, and Plaintiffs have offered no reasoning to the contrary.  The Court observes, moreover, that the "base rate" loan would already appear to be excluded from the class based on the F&R's class definition, which limits the action to loans involving "an interest rate provision based upon Cost of Funds." F&R at 31, ECF No. 317.

plaintiffs to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even a "single *significant* question of law or fact" will suffice. <u>Abdullah v. U.S. Sec. Ass'n, Inc.</u>, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis in original); <u>see also</u> <u>Wal-Mart Stores</u>, 131 S. Ct. at 2556 (explaining that "[e]ven a single common question" can meet Rule 23(a)(2)'s commonality requirement). These common questions may center on "shared legal issues with divergent factual predicates [or] a common core of salient facts coupled with disparate legal remedies." <u>Jimenez v. Allstate Ins. Co.</u>, 765 F.3d 1161, 1165 (9th Cir. 2014) (citation omitted).

Closely related to the issue of commonality is the requirement of predominance under Rule 23(b)(3), pursuant to which courts must ask "'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" <u>In re Wells Fargo Home Mortg. Overtime Pay Litig.</u>, 571 F.3d 953, 957 (9th Cir. 2009) (quoting <u>Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.</u>, 244 F.3d 1152, 1162 (9th Cir. 2001)). In contrast to commonality, however, predominance requires that class members' common issues be "a significant aspect of the case and they [must] be resolved for all members of the class in a single adjudication." <u>Las Vegas Sands, Inc.</u>, 244 F.3d at 1162.

First, the Court ADOPTS the F&R's findings of

commonality and predominance as to Plaintiffs' express breach of contract claim.  As the F&R correctly concluded, there appear to be "significant factual issues regarding the Cost of Funds provision that are common to the class."  Specifically, it is undisputed that the putative class members have loans with the same interest rate definition, and that Lloyds made the same Cost of Funds increases to the interest rates of all class members. F&R at 26, ECF No. 317.  In addition, the "key legal issue[]" presented by Plaintiffs' breach of contract claim – whether Lloyds "permissibly passed on the cost of the LTP charge to borrowers by including the charge in the Cost of Funds" – is common to all members of the class.  Id. at 27.  The Court can resolve this issue for all class members in a single action, fulfilling Rule 23's commonality and predominance requirements.

Lloyds objects that the class cannot reflect commonality or predominance because Plaintiffs assert one particular interpretation of the Cost of Funds provision while supposedly ignoring that "the factual basis for that interpretation is highly individualized."  Obj. at 29, ECF No. 332.  For example, Lloyds posits that some class members may have an interpretation of the Cost of Funds different from the interpretation asserted by Plaintiffs in this case, owing to "incomplete and in many cases incorrect information" they were provided by non-party brokers or other information they received

from third parties or Lloyds.  Id. at 29-30.

Lloyds' objection is not well-taken.  The standard applicable to the "key legal issue" (the proper interpretation of the Cost of Funds provision) is an objective one.  As the Court previously found, a plaintiff bringing an action for breach of contract under Hong Kong law must show that there were express or implied contractual terms requiring the defendant to act in some manner, and that the defendant acted contrary to those terms. See Order Granting in Part and Denying in Part Defendant's Motion to Dismiss ("MTD Order") at 26-27, ECF No. 73 (citing Hong Kong Fir Shipping Co. Ltd. v. Kawasaki Kisen Kaisha Ltd., [1962] 2 QB (QB Div. 1962)).  Contractual language is interpreted by "'ascertain[ing] . . . the meaning which the document would convey to a reasonable person having all the background knowledge which would reasonably have been available to the parties in the situation in which they were at the time of the contract." Id. (quoting Investors Comp. Scheme Ltd. v. West Bromwich Bldg. Soc'y, [1998] 1 WLR 896 at 17).  This "reasonable person" standard does not include the consideration of any "previous negotiations of the parties and their declarations of subjective intent."  F&R at 11, ECF No. 317 (quoting Investors Comp. Scheme Ltd., [1998] 1 WLR 896 at 17.[7]

---

[7]Plaintiffs provide additional authority in the instant briefing, which Lloyds did not contest, to indicate that Hong

(continued...)

Accordingly, it is not relevant to the "key legal issue" presented whether individual class members may have had different subjective understandings or broker information prior to making their loan agreements.  Plaintiffs are not, of course, obligated to show that every class member operated under the very same factual background, only that common issues predominate.  In addition, Plaintiffs confirm that they "do not intend to rely on any pre-contract oral representations in proving their claims," consistent with the applicable objective standard under Hong Kong law.  Response at 13, ECF No. 335.  Lloyds has essentially no response to this in its Reply.  See Reply at 18, ECF No. 337-1.

As it appears that common issues of fact and law pertain to Plaintiffs' breach of contract claim regarding the Cost of Funds, which is also a "significant aspect of the case" that can be "resolved for all members of the class in a single adjudication," Las Vegas Sands, Inc., 244 F.3d at 1162, the Court ADOPTS the F&R's findings of commonality and predominance as to Plaintiffs' breach of contract claim.

Second, the Court ADOPTS the F&R's findings of commonality and predominance as to Plaintiffs' claim for breach

---

[7](...continued)
Kong law presumes the completeness of a written contract and excludes evidence intended to alter the terms of a facially complete contract.  See Response at 12, ECF No. 335 (citing Masterton Homes Pty Ltd. v. Palm Assets Pty Ltd., [2009] NSWCA 234 ¶ 90; Gillespie Bros. & Co. v. Cheney, Eggar & Co., [1896] 2 QB 59 at 62).

of an implied contractual term.  F&R at 15, 27, ECF No. 317.

Plaintiffs allege as to this claim that their loan agreements

carried an "implied term requiring [Defendant] to exercise any

discretion it has to change the Cost of Funds component of the

interest [rate] honestly and in good faith, and not for an

improper purpose, capriciously or arbitrarily, having regard to

the proper purpose and provision of the contract."  F&R at 13,

ECF No. 317 (quoting TAC ¶ 70, ECF No. 100).  Plaintiffs argue

that Lloyds breached this implied term by increasing borrowers'

interest rates for the company's own profit.  Id. (citing TAC

¶ 71, ECF No. 100).

        The F&R found, as noted above, that the Cost of Funds

term is the same in all of the class members' loan agreements,

and that Lloyds calculated the Cost of Funds in the same manner

for all of the class members.  F&R at 13, ECF No. 317. The "key

legal issue" as to this claim, "whether a term limiting

Defendant's discretion should be implied into the facility

agreements," is common to the full class and capable of

resolution in a single action  Id. at 27.

        In the instant briefing, Lloyds reiterates two

arguments rejected by Magistrate Judge Puglisi, and the Court

rejects them here.  Lloyds observes that under Hong Kong law,

whether an implied term should be read into a contract "depends

upon the relevant factual circumstances."  Obj. at 32, ECF No.

17

332 (quoting <u>Pac. Long Distance Tel. Corp., Ltd. v. New World Telecomm, Ltd.</u>, [2012] HCA 1688/2006 at ¶ 38)).  Specifically, an implied term is "unlikely to arise by way of necessary implication in a contract between two sophisticated commercial parties negotiating at arms' length."  <u>Id.</u> (quoting <u>Greenclose Ltd. v. Nat'l Westminster Bank</u>, [2014] EWHC 1156 (Ch. Div. Apr. 14, 2014) at ¶ 150.

The F&R had concluded that, in view of <u>Greenclose</u>, issues common to the class would predominate regardless of borrowers' individual levels of sophistication because the "relevant terms of the facility agreements" (i.e., the Cost of Funds clauses) "were non-negotiable and [] borrowers would not have been permitted to change the relevant language."  F&R at 15, 27, ECF No. 317.  Lloyds objects, however, that individual borrowers' sophistication must still be examined, and that this defeats commonality and predominance.  Supposedly, this is because the F&R misapplied <u>Greenclose</u> and erred in finding that the parties' contracts were non-negotiable.  <u>See</u> Obj. at 33-35, ECF No. 332.

The Court disagrees.  First, Lloyds contends that "it is far from clear that the F&R correctly interprets and applies the language in <u>Greenclose</u>," Obj. at 34, ECF No. 332, but provides little support for its assertion.  Lloyds cites to one Ninth Circuit case for the proposition that "negotiating at arms

length" refers not to the parties' "degree of negotiation" but describes "an agreement between parties who are independent, non-collusive and self-interested."  Obj. at 34, ECF No. 332 (citing Novak v. Seiko Corp., 37 Fed. App'x 239, 246 (9th Cir. 2002)). According to Lloyds, the loan agreements at issue reflect this type of independence, because they were entered by "wholly distinct and self-interested parties: Lloyds Bank and each respective borrower."  Id. at 35.

Novak, however, was not applying Hong Kong law, and Lloyds offers no suggestion that it would inform a Hong Kong court's analysis of Plaintiffs' legal claims.  Moreover, Novak simply stated that the parties there could "not be said to have been two adversarial parties negotiating at arm's length to further their own economic interest."  37 Fed. App'x at 246. This passage hardly provides a definition for "arms' length negotiation" that conflicts with the F&R's interpretation.

Second, the Court concludes that the F&R correctly determined that "the *relevant* terms of the facility agreements were non-negotiable."  F&R at 15, ECF No. 317 (emphasis added). Lloyds argues that borrowers could tailor their IMS loans by choosing their contract's maturity and currency, whether and how often to change currencies, whether to pay back loan principal or interest, and whether to submit payments monthly or quarterly. Obj. at 35, ECF No. 332.  These terms of the loans, however, are

19

not the relevant ones underlying Plaintiffs' substantive claims and giving rise to commonality and predominance.  Rather, the relevant term is the Cost of Funds provision, which is undisputedly common to the full class's loans.  Lloyds does not suggest that the Cost of Funds term was negotiable, and the evidence in the record confirms the same.  <u>See</u> Deposition of Robin Milne at 26:19-27:7, ECF No. 177-3 (stating that borrowers were not permitted to change the language in the loans' facility agreements).

Accordingly, for the reasons explained above, the Court rejects Lloyds' objections and ADOPTS the F&R's findings as to the commonality and predominance of the class.

## II.  Superiority Under Rule 23(b)(3)

Based on the record before it, the Court REJECTS the F&R's finding that the proposed class as defined therein meets the superiority requirement of Rule 23(b)(3).  <u>See</u> F&R at 31, ECF No. 317.  The Court further concludes, however, that simply defining the class to exclude most plaintiffs of non-U.S. citizenship will allow the class definition to comply with Rule 23(b)(3)'s superiority requirement.  According to Lloyds' briefing, 39 of the 169 loan accounts at issue are held by borrowers of non-U.S. nationalities (these borrowers evidently are citizens of Japan, Brazil, Canada, New Zealand, South Korea, India, Montenegro, Russia, Taiwan, and the United Kingdom).  <u>See</u>

Obj. at 8-9, ECF No. 332.  These borrowers (with the exception of those who are citizens of Canada, for the reasons discussed below) will be excluded from the proposed class, which will be limited to plaintiffs of U.S. and Canadian citizenship at this time.

Rule 23(b)(3) sets forth a non-exhaustive list of factors that courts should consider in determining superiority. These include: (1) class members' interests in individual actions, (2) the extent and nature of litigation already begun by class members, (3) the desirability of a particular forum, and (4) the likely difficulties in managing a class action.  See Fed. R. Civ. P. 23(b)(3).  Lloyds does not dispute that the first three factors are not contrary to class certification but argues that the fourth factor weighs heavily against a finding of superiority because "'a preponderance of the loan agreements in Plaintiffs' proposed class are potentially subject to foreign jurisdictions, many of which would not grant res judicata effect to this Court's judgment.'"  F&R at 28, ECF No. 317 (quoting Lloyds' Mem. in Opposition to Plaintiffs' Mot. for Class Certification ("Opp.") at 37, ECF No. 167); see also Obj. at 4-17, ECF No. 332.  Lloyds therefore asks that the Court decline to certify the class or, alternatively, exclude members whose accounts bear "non-U.S. indicia" as to the borrower's nationality or residence or the location of the subject property.  Obj. at

21

17, ECF No. 332.

As the F&R recognizes, federal courts in recent years have found it proper to "consider res judicata concerns when evaluating the Superiority Requirement with respect to a proposed class that includes foreign class members.'"  F&R at 29, ECF No. 317 (quoting In re Alstom SA Sec. Litig., 253 F.R.D. 266, 281 (S.D.N.Y. 2008)).[8]  The *res judicata* concerns for transnational class action defendants like Lloyds are twofold: first, a foreign plaintiff may get a second bite at the apple through subsequent litigation in her home forum, and second, a foreign court may not honor a domestic class judgment in a defendant's favor.  See, e.g., Zachary D. Clopton, Note, Transnational Class Actions in the Shadow of Preclusion, 90 Ind. L.J. 1387, 1393-96 (2015) (describing the "[h]eads I win; tails you lose" asymmetries of foreign plaintiffs' class litigation options).

The trending approach of federal courts nationwide appears to be evaluating the *res judicata* effects of class judgments with respect to groups of foreign plaintiffs and then excluding from the class those whose home countries would not

---

[8]This issue has also been the topic of substantial scholarship in recent years.  See, e.g., Rhonda Wasserman, Transnational Class Actions and Interjurisdictional Preclusion, 86 Notre Dame L. Rev. 313(2011); Michael P. Murtagh, The Rule 23(b)(3) Superiority Requirement and Transnational Class Actions: Excluding Foreign Class Members in Favor of European Remedies, 34 Hastings Int'l & Comp. L. Rev. 1 (2011); Gary W. Johnson, Note, Rule 23 and the Exclusion of Foreign Citizens as Class Members in U.S. Class Actions, 52 Va. J. Int'l L. 963 (2012).

honor a class judgment from the United States.  See, e.g., Anwar v. Fairfield Greenwich Ltd., 289 F.R.D. 105, 114-21 (S.D.N.Y. 2013) (vacated on other grounds); In re Alstom, 253 F.R.D. at 282; In re Vivendi Universal, S.A., 242 F.R.D. 76, 95 (S.D.N.Y. 2007); In re DaimlerChrysler AG Sec. Litig., 216 F.R.D. 291, 301 (D. Del. 2003).[9]  Such exclusions have occurred notwithstanding these courts' recognition that class manageability is only one of multiple factors to be considered under Rule 23(b)(3), and that res judicata risks as to foreign plaintiffs should be evaluated "along a continuum."  Anwar, 289 F.R.D. at 115 (quoting In re Vivendi Universal, 242 F.R.D. at 95 (further quotation omitted)). These courts have also clarified that it is plaintiffs' burden to "demonstrat[e] that 'foreign court recognition is more likely than not'" as to a U.S. class judgment.  Id. (quoting In re Alstom, 253 F.R.D. at 282).[10]

---

[9]In view of the foregoing cases and the Supreme Court's recent guidance regarding Plaintiffs' burdens under Rule 23, the Court is not convinced that several of the older authorities offered by Plaintiffs in the instant briefing remain good law.
    For example, the Court is disinclined to rely on authority holding that "it is defendants who bear the 'burden of demonstrating a substantial probability of subsequent foreign suits and consequent enforcement of adverse judgments against assets held abroad' in order to exclude foreign purchasers." Response at 28, ECF No. 335 (quoting Jordan v. Global Natural Res., Inc., 104 F.R.D. 447, 448 (S.D. Ohio 1984)).

[10]Although Plaintiffs correctly note that the Ninth Circuit has not yet addressed whether it would apply this "probability test" for class certification, the foregoing out-of-Circuit authorities appear to be trending on the issue.

(continued...)

Significantly, _Anwar_ instructs that where a plaintiff "sufficiently demonstrates that the _stated policy_ of a foreign country is to recognize and enforce foreign judgments, or that its law is generally inclined to favor that course of action, such a showing would create a rebuttable presumption that, absent an _affirmative showing_ to the contrary, recognition of [a class judgment] does not violate a foreign country's public policy." Id. (emphases added).[11]  However, where courts are simply presented with "dueling expert reports" regarding the likelihood of _res judicata_ abroad, these may amount to "no more than high-priced arm-chair oracles, conjecture that provides little assistance to the Court, one way or another."  Id.

---

[10](...continued)
The Court also notes that requiring Plaintiffs to demonstrate the "probability" of _res judicata_ in foreign class members' home countries would seem to be consistent with Plaintiffs' overarching "burden of demonstrating that [they] have met each of the requirements" for class certification, including superiority.  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001)(citation omitted); see also Comcast, 133 S. Ct. at 1428.

[11]The Court notes that Plaintiffs' Sur-Reply suggests that Anwar mandates "clear and convincing evidence" to rebut this presumption; however, as set forth above, an "affirmative showing to the contrary" is what Anwar expressly requires.  That court had simply added that the defendants could move to sever foreign class members if, in future, they discovered clear and convincing evidence that the included class members' home countries would not actually enforce the court's judgment.  Anwar, 289 F.R.D. at 115.  In any event, Lloyds did offer "affirmative showings" regarding foreign _res judicata_ issues here, notwithstanding Plaintiffs' failure to brief the preclusion law of any foreign country except Japan.  See Opp. at 35-37, ECF No. 167.

To that end, where plaintiffs have failed to adequately brief *res judicata* concerns related to foreign class members, courts have found it appropriate to exclude those members from the class altogether.  See, e.g., In re Daimler Chrysler, 216 F.R.D. at 301 (excluding foreign plaintiffs where "Lead Plaintiffs have not adequately responded to Defendants' concerns regarding the issues of class management and damages suffered by purchasers on foreign exchanges"); In re Vivendi Universal, 242 F.R.D. at 105 (excluding class members from foreign countries as to which plaintiffs' expert opinions fell "short of establishing a probability that [the] court would grant preclusive effect to any judgment or settlement issuing from this action").

The F&R concluded that "any res judicata concerns are speculative," because "the number of foreign putative class members is limited" and "the court's judgment would be enforceable in the United States by an overwhelming majority of putative class members."  F&R at 29-30, ECF No. 317.  As Lloyds points out, however, the issue is not whether the Court's judgment would be enforceable in the U.S.; rather, the issue is whether foreign courts would give preclusive effect to a U.S. judgment.  Lloyds also argues that the F&R did not appropriately put *Plaintiffs* to their proof for purposes of class certification, consistent with recent Supreme Court precedents demanding that they affirmatively demonstrate the class's

compliance with Rule 23.  See Obj. at 3-4, ECF No. 332 (citations omitted).  The Court agrees.

In the briefing before Magistrate Judge Puglisi, Lloyds provided significant discussion regarding "foreign jurisdictions that may not honor this Court's judgment," based on what it calls "non-U.S. indicia" (borrower residency, borrower nationality, and non-U.S. subject property) of the proposed class members' loans. That briefing included a table of foreign jurisdictional loan accounts and analyses of the relevant countries' approaches to res judicata, supported by foreign and domestic legal authorities.  See Opp. at 34-37, ECF No. 167.  By Lloyds' count, a "preponderance" of the loan agreements in Plaintiffs' proposed class are potentially subject to foreign jurisdictions (specifically, Brazil, Canada, Hong Kong, Japan, Montenegro, New Zealand, Russia, Singapore, South Korea, Switzerland, Taiwan, and the United Kingdom).  Lloyds' legal analysis shows that several of these jurisdictions are unlikely to grant res judicata effect to the Court's judgment.  See id.

Plaintiff, meanwhile, has not undertaken to provide country-by-country analyses of res judicata issues – even in response to Lloyds' briefing – except as to Japan.  See Response at 32-34, ECF No. 335; Sur-Reply at 9-11, ECF No. 340.  Even in that respect, Plaintiffs did not provide the Court with authority affirmatively indicating that it is Japanese courts' "stated

policy" or even trend to honor foreign judgments, particularly class judgments.[12]  To the contrary, Plaintiffs and their expert offer, *inter alia*, a single case recognizing an individual default judgment from the U.S., opinions regarding the cost and difficulty of choosing to litigate in Japan, the preclusive effects of *settlements* (rather than litigation) in Japan, and the speculation that "Japan courts will find it hard to refuse to recognize any class judgment" after a new class action law takes effect in December 2016.  Response at 33-34, ECF No. 335; see also Declaration of Dr. William B. Cleary ¶¶ 22-32, ECF No. 334-1.[13]  Elsewhere, however, Plaintiffs admit that "it remains unknown whether a court would give preclusive effect to a

---

[12]The Court observes that at least one federal court has excluded Japanese plaintiffs from a proposed class due to Plaintiffs' failure to respond adequately to *res judicata* concerns.  See Anwar, 289 F.R.D. at 121.

[13]The Court takes note that both parties submitted dueling expert declarations regarding Japanese law.  See ECF Nos. 331-1, 334-1, 336-1.  These declarations, however, do not provide the Court with a "stated policy" or trend among Japanese authorities.  Lloyds' expert's declaration makes clear that there simply is "no judicial precedent which has considered the application of Article 118 [Japan's code section regarding recognition of foreign judgments] to a class action judgment."  Declaration of Koji Takahashi ¶ 10, ECF No. 331-1.
The declarations rely instead on the experts' predictions of *res judicata* effects in Japan, based on analogies to other situations.  In this respect, they are similar to the declarations providing "conjecture that provides little assistance to the Court, one way or another" referenced in Anwar, 289 F.R.D. at 115.

judgment."  Response at 30, ECF No. 335.[14]

As discussed above, it is Plaintiffs' burden to show that class certification complies with Rule 23, rather than Lloyds' burden to show that it does not.  See Zinser, 253 F.3d at 1186; see also Wal-Mart Stores, 131 S. Ct. at 2551.  Class certification is proper only if the trial court is satisfied, after a "rigorous analysis," that Rule 23's requirements have been met.  "Actual" rather than "presumed" compliance with the rule is necessary.  Id. (citing Gen. Tel. Co. of Sw. v. Falcon, 102 S. Ct. 2364, 2372 (1982)).  To this end, other courts examining res judicata concerns in the transnational class action context have been provided with substantial records and briefing by the litigants on country-by-country preclusion law.  See, e.g., Anwar, 289 F.R.D. at 115 ("The Court is currently presented

---

[14]Plaintiffs also contend that "[i]n analogous situations, courts have dismissed res judicata concerns with lead plaintiffs in securities class action litigations unless they are 'foreign cubed,' i.e., foreign investors who purchased foreign investments on foreign exchanges."  Sur-Reply at 8, ECF No. 340 (citing Hufnagle v. RINO Int'l Corp., Civ. No. 10-8695 VBF, 2011 WL 710704 * 7 (C.D. Cal. Feb. 14, 2011); Roby v. Ocean Power Tech., Civ. No. 14-cv-3779 (FLW)(LHG), 2015 WL 1334320 * 12 (D.N.K. Mar. 17, 2015)).

This argument is unpersuasive.  First, the cited discussions in Hufnagle and Roby both related to the adequacy of lead plaintiffs under Rule 23(a)(4), not the superiority of class-based litigation under Rule 23(b)(3).  Moreover, Plaintiffs do not explain why the foreign class members in this case would not represent exactly the sort of concerning "foreign cubed" investors described in Hufnagle.  Indeed, they are foreign investors who purchased foreign loan products from a foreign bank.  It would seem, therefore, that considerations related to "foreign cubed" plaintiffs could apply here.

with extensive dueling expert reports from preeminent practitioners and scholars debating the likelihood of foreign recognition of a United States opt-out class action judgment.").

Here, Plaintiffs' briefing does not meet their burden to show Rule 23 compliance.  The Court does not have the benefit of a developed record on country-by-country preclusion considerations and declines to certify a class including foreign plaintiffs in whose home countries Plaintiffs have not shown a probability of *res judicata* effects.  See In re DaimlerChrysler, 216 F.R.D. at 301 (excluding foreign class members due to plaintiffs' failure to provide evidence overcoming *res judicata* concerns); In re Vivendi Universal, 242 F.R.D. at 105 (same).

The Court does, however, agree with Plaintiffs that it need not decline to certify *any* class.  As Lloyds recognizes, the Court could simply define the class to exclude foreign nationals. See Obj. at 32, ECF No. 332; see also, e.g., In re DaimlerChrysler, 216 F.R.D. at 301 (finding that "Lead Plaintiffs have not adequately responded to Defendants' concerns" regarding foreign plaintiffs but concluding that "the appropriate way in which to address the concerns related to foreign investors is not to deny class certification, but to certify a class comprising only domestic investors").[15]

---

[15]The Court has at its disposal only limited data regarding the individual class members.  Lloyds produced what it calls an

(continued...)

However, the Court notes that a unique complication exists here: the only available evidence suggests that Willcox is a Canadian citizen.  Briefing submitted by Lloyds on a different motion previously described Willcox as such, and Plaintiffs did not contest his citizenship.  See Mem. in Support of Mot. to Dismiss at 6, ECF No. 62-1.  As noted above, a November 24, 2014 declaration filed by Willcox in this case had indicated that he is a Canadian citizen with Permanent Resident status in the U.S., and that he planned to "apply[] for citizenship in 2015."  Declaration of Bradley Willcox ¶¶ 4-5, 29, ECF No. 68-12.  The

_____

[15](...continued)
"Anonymized Data Spreadsheet" regarding the 169 loans that are implicated in this case, but it has not produced a list of individual borrowers.  The Anonymized Data Spreadsheet lists various data linked to the loan accounts but does not list borrower names.  See Errata to Ex. 51 to Mot. for Class Certification, ECF No. 316-1.

Based on the information in Lloyds' spreadsheet, it appears that excluding foreign borrowers from the class (with the exception of Canadian citizens) would still leave 137 loan accounts in the proposed class.  See id. at 6-7; see also Obj. at 8-9, ECF No. 332.  Presumably, most (if not all) of these loans were taken out by different borrowers.  The Court recognizes that an individual plaintiff could possess more than one loan; however, the limited, anonymized data produced by Lloyds does not allow the Court to determine whether this has occurred.

The Court thus assumes that there are approximately 137 borrowers in the proposed class.  This well exceeds the minimum requirements for numerosity under Rule 23.  See McMillon v. Hawaii, 261 F.R.D. 536, 542 (D. Haw. 2009) ("Generally, a class satisfies numerosity if it is likely to exceed forty members.").

Lloyds' objection as to numerosity is therefore rejected.  See Reply at 12 n.9, ECF No. 337-1.  The Court notes that Lloyds' arguments regarding numerosity also presumed that the Court would exclude class members with "indicia" of foreign residency or property; however, for the reasons discussed herein, the Court is not excluding class members on those two particular bases.

30

Court is unsure whether Willcox actually became a U.S. citizen (or even initiated a citizenship application) since that time. The TAC also expressly describes the Dominicks' citizenship and residency but omits any reference to Willcox's citizenship, stating only that he is a "resident" of Hawaii. TAC ¶ 6, ECF No. 100. Plaintiffs' earlier complaints did not address Willcox's citizenship.

Assuming that Willcox is a Canadian citizen, a blanket exclusion of foreign plaintiffs from the proposed class would eliminate the only remaining named plaintiff in this case. No party addressed this dilemma at any stage of the instant briefing. In particular, Lloyds did not object to Willcox's adequacy as a class representative on this basis, and the Court finds that Willcox is an otherwise typical and adequate class representative for the reasons explained below. The Court is tasked with ensuring the just, speedy, and inexpensive resolution of this litigation. Fed. R. Civ. P. 1. To that end, the Court cannot simply ignore the repercussions of Willcox's apparent citizenship when considered against any exclusion of foreign class members.

Given the foregoing circumstances and the parties' failure to address the issue, the Court examines the available evidence regarding *res judicata* in Canada and concludes that the class may be certified to include members of Canadian (as well as

31

U.S.) citizenship.  When determining foreign law, courts "may consider any relevant material or source," including determinations by other courts.  In re Alstom, 253 F.R.D. at 291 (quoting Fed. R. Civ. P. 44.1).  Additionally, "the fact that United States courts have generally certified proposed classes which included Canadian lead plaintiffs and class members[] is particularly persuasive."  Id.

Federal courts have previously certified classes with Canadian members, finding that Canadian courts "would more likely than not recognize and give preclusive effect to a judgment rendered" by a U.S. court.  Id.; see also Anwar, 289 F.R.D. at 117.  The only contrary authority cited in Lloyds' brief before Magistrate Judge Puglisi is the Canadian case of Currie v. McDonald's Restaurants of Canada, Ltd., 74 O.R. (3d) 321, 325, 330, 336 (Ont. C.A. 2005)(cited in Opp. at 35, ECF No. 167). However, that decision denied recognition of a U.S. class judgment on the basis that the "notice given to the non-resident class members was inadequate."  Currie, 74 O.R. at 322, ECF No. 166-2.  Contrary to Lloyds' suggestion, such language would seem to suggest that the Canadian court would have honored the U.S. class judgment if adequate notice had been provided.

Consistent with the foregoing authorities, and having considered all of the factors under Rule 23(b)(3) (including, without limitation, the desirability of this forum and the likely

difficulties of managing the class), the Court concludes that the class in this case should be limited to members of U.S. and Canadian citizenship, who appear to pose no cognizable *res judicata* concerns for Lloyds.  All other foreign plaintiffs will be excluded from the class, for the reasons discussed above.  As a final matter, the Court also finds that the F&R correctly concluded that Lloyds did not provide authority for its arguments regarding the consideration of any "non-U.S. indicia" other than borrower nationality, which appears to be the only basis on which other federal cases have excluded foreign class members.  See F&R at 29, ECF No. 317.  Accordingly, the Court rejects Lloyds' request to exclude other class members on the basis of any additional "non-U.S. indicia" (specifically, borrower residency and the location of subject property).[16]

### III. Willcox Is a Typical and Adequate Class Representative

The Court ADOPTS the F&R's finding that Willcox is a

---

[16]Lloyds briefly complains that the F&R "presume[s] that the 'Nationality' column in the Anonymized Data shows borrowers' citizenship . . . [but] 'Nationality' in the Anonymized Data is not necessarily synonymous with citizenship."  Obj. at 15, ECF No. 332.  Lloyds has not, however, offered authority for any different meanings that "nationality" and "citizenship" may have. Moreover, because the Anonymized Data spreadsheet includes distinct columns for both "nationality" and "residency," it would seem that "nationality" is intended to refer to borrowers' citizenship (rather than location) in Lloyds' records.  See Errata to Ex. 51 to Mot. for Class Certification, ECF No. 316-1. Recognizing that Lloyds itself authored the Anonymized Data chart, Lloyds' objection regarding the F&R's supposed misconstruction of the term "nationality" appears questionable.

typical and adequate class representative.  See F&R at 19, 25, ECF No. 317.

First, with respect to Willcox's typicality, the Court finds Lloyds' objections unmerited.  Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  This requirement is not met if a putative class representative is "subject to unique defenses which threaten to become the focus of the litigation," creating a "danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted); see also, e.g., O'Connor v. Uber Techs., Inc., No. C-13-3826 EMC, 2015 WL 5138097 * 11 (N.D. Cal. Sept. 1, 2015) (finding that a potential unclean hands defense related to a named plaintiff's alleged fraud was not likely to become the focus of class litigation).  As Lloyds acknowledges, the party opposing certification "must show some degree of likelihood that a unique defense will play a significant role at trial."  Obj. at 18, ECF No. 332 (quoting 5 Moore's Fed. Prac. Civil § 23.24[5] (3d ed. 1997)).

Here, Lloyds claims that Willcox is atypical because he previously breached the loan-to-value ("LTV") ratio provision of his loans.  That provision states essentially that "should the

loan's contractually agreed LTV ratio be exceeded because of currency fluctuation or any other development, Lloyds Bank can require borrowers to restore that ratio by providing added security, cash deposits, or both in order to 'top up' the loan." Obj. at 18-19, ECF No. 332 (citations omitted); see also Facility Agreement, Declaration of Martha Sullivan ("Sullivan Decl.") Ex. Z, ECF No. 167-28.

Willcox's loans carry a 75% LTV ratio requirement, pursuant to which Lloyds requested remedial action from Willcox on October 24, 2008.  Ltr. of Lloyds to Bradley John Willcox at 1-2, Sullivan Decl. Ex. II, ECF No. 167-37.  The parties detail their ensuing communications at some length, but it is not disputed that Willcox's loans are *not* presently in violation of the LTV ratio provision.  See Obj. at 25, ECF No. 332 (recognizing that Willcox's loans "came back into balance"); Response at 17, ECF No. 335 ("[A]ll of Dr. Willcox's loans are currently within acceptable LTV ratios."); Reply at 17, ECF No. 337-1 (recognizing that Willcox's LTV ratios returned to balance due to U.S. dollar/Yen exchange rates); Sur-Reply at 11-16, ECF No. 40 (describing the parties' repayment discussions and Willcox's loans' return to LTV balance).

It does not appear to be material that Willcox's loans returned to LTV balance due to "extrinsic events," namely, "exchange rate changes between the Dollar and the Yen."  Obj. at

25, ECF No. 332.  The fact remains that Willcox is not in breach of his loans at this time.  In addition, Lloyds never exercised its option to call his loans or filed a cross-claim for breach of contract.  Lloyds has offered no authority to suggest that Willcox's prior LTV breaches would somehow become a unique defense going forward, much less one with the capacity to "become the focus of the litigation." Hanon, 976 F.2d at 508.[17]

Moreover, assuming *arguendo* that Willcox were in breach of his loans' LTV ratio provision – which he evidently is not – the Court finds persuasive the Dugan court's finding that this particular type of breach would not render a class representative atypical.  See Dugan v. Lloyds TSB Bank, PLC, 2013 WL 1703375 * 4-5 (N.D. Cal. Apr. 19, 2013) (certifying the Dugan plaintiffs as class representatives despite their alleged LTV breaches, which it found did "not carry the [] risk" that "absent class members' chances of success will suffer due to plaintiffs' peculiar circumstances").

---

[17]Lloyds repeatedly complains that the LTV provisions are "critical to IMS Loans, without which those loans would never have been made."  Reply at 14, ECF No. 337-1.  This is because Lloyds would bear all risks of currency fluctuation without the ability to demand a "top-up" from a borrower.  Id.

The importance of these LTV provisions to Lloyds is not, however, the dispositive issue.  The question before the Court is whether a particular named plaintiff's circumstances have the capacity to "become the focus of the litigation," to the detriment of absent class members.  Hanon, 976 F.2d at 508.  Here, there is no evidence that Willcox's now-resolved LTV issues (which never even led Lloyds to call his loans) would distract from the litigation in this way.

Second, the Court notes that Lloyds insists that it is also challenging Willcox's adequacy as a class representative (apart from his typicality) because he has "unclean hands." Reply at 12 n.9, ECF No. 337-1.  This argument is made in Lloyds' Reply notwithstanding that the parties' briefs almost exclusively discuss Willcox's typicality, not adequacy.  See Obj. at 17-28, ECF No. 332; Response at 15-23, ECF No. 335; Reply at 12, ECF No. 337-1.  Lloyds does not identify any "unclean hands" concerns regarding Willcox apart from the LTV issues described above.

For the sake of clarity, the Court reviews Lloyds' objection to Willcox's adequacy on the grounds of "unclean hands" and finds it unmeritorious.  Rule 23(a)(4) requires that a class representative must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  A named plaintiff satisfies this adequacy requirement if she has no conflicts of interest with other class members and will "prosecute the action vigorously on behalf of the class."  See Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (citation omitted).

There is no evidence that Willcox has any conflicts of interest with class members.  In addition, for the reasons set forth above with respect to Willcox's typicality, the Court concludes that Willcox's history of LTV issues (i.e., his alleged "unclean hands") will not undermine his ability to prosecute this

37

action on behalf of the class going forward.  Accordingly, the Court rejects Lloyds' objection to Willcox's adequacy.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court ADOPTS in part, REJECTS in part, and MODIFIES in part the F&R.  The Court REJECTS the F&R's finding that Plaintiffs have demonstrated the superiority of class litigation under Rule 23(b)(3) as to the class defined therein.  However, the Court will certify the class as defined therein with the modification that the class shall be limited to plaintiffs of U.S. and Canadian citizenship.  The remainder of the F&R is ADOPTED, over Lloyd's objections.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 8, 2016.


_____
Alan C. Kay
Sr. United States District Judge


<u>Willcox v. Lloyds TSB Bank, PLC, et al.</u>, Civ. No. 13-00508 ACK-RLP, Order Adopting in Part, Rejecting in Part, and Modifying in Part the Findings and Recommendations to Grant in Part and Deny in Part Plaintiffs' Motion for Class Certification.