IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                        )
BRADLEY WILLCOX, FRANK DOMINICK,        )
and MICHELE SHERIE DOMINICK,            )
                                        )
              Plaintiffs,               )
                                        )
v.                                      )  Civ. No. 13-00508 ACK-RLP
                                        )
LLOYDS TSB BANK, PLC and DOES           )
1-15,                                   )
                                        )
              Defendants.               )
_____)

## ORDER GRANTING DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF DISPOSITIVE MOTIONS, RULE 23(F) PETITION, AND ANY RESULTING APPEAL AND VACATING TRIAL DATE

For the reasons set forth below, the Court GRANTS Defendant Lloyds TSB Bank PLC's Motion to Stay Proceedings Pending Resolution of Dispositive Motions, Rule 23(f) Petition, and Any Resulting Appeal ("Motion to Stay").  ECF No. 402. Further, the Court vacates the trial date.

### PROCEDURAL BACKGROUND

The Court and parties are familiar with the extensive factual and procedural history of this case, and the Court will not repeat it here except as necessary.

On March 27, 2015, Plaintiffs filed the operative Third Amended Complaint ("TAC").  ECF No. 100.  The TAC names Frank Dominick, Michele Sherie Dominick, and Bradley Willcox (collectively, "Plaintiffs") as class representatives and brings

- 1 -

claims against Lloyds TSB Bank, PLC, now known as Lloyds Bank PLC ("Lloyds" or "Defendant") for Breach of Contract (Count I) and Breach of an Implied Term Limiting Lloyds' Discretion to Change the Interest Rate (Count II).  Id. ¶¶ 6-8, 55-72.

Trial in this case was earlier set to commence on May 17, 2016.  ECF No. 178.

## I.   Class Certification and Rule 23(f) Petition

On July 15, 2015, Plaintiffs filed a Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23.  ECF No. 156.  After briefing and oral argument from the parties, Magistrate Judge Puglisi issued his Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion for Class Certification ("F&R") on November 12, 2015.  ECF No. 317.  The F&R recommended: (1) certifying the instant case as a class action, (2) appointing Willcox (but not the Dominicks) as class representative, (3) appointing Alston Hunt Floyd & Ing and Steptoe & Johnson LLP as class counsel, (4) directing the parties to meet and confer regarding notice to class members, (5) denying any remaining relief requested in Plaintiffs' class certification motion, and (6) defining the certified class as:

> All persons and entities who entered prior to August 2009 into an IMS [International Mortgage System] loan with Lloyds that contained a Hong Kong choice-of-law provision and an interest rate provision based upon Cost of Funds and who are, or were at any time during entering into such

> an IMS loan, residents or citizens of the
> State of Hawaii, or owners of property in
> Hawaii that was mortgaged to secure any such
> IMS loan.

Id. at 31-32.  Lloyds filed objections to the F&R on November 25, 2015, ECF No. 332, to which Plaintiffs filed a Response on December 9, 2015, ECF No. 335.  The parties also submitted supplemental Reply and Sur-Reply briefs on December 17, 2015 and December 28, 2015, respectively.  ECF Nos. 337, 340.

On January 8, 2016, the Court issued an Order Adopting in Part, Rejecting in Part, and Modifying in Part the Findings and Recommendations to Grant in Part and Deny in Part Plaintiffs' Motion for Class Certification ("Class Certification Order").  ECF No. 366.  For the reasons explained therein, the Court adopted the F&R over Lloyds' objections, except as to the class definition, which the Court modified to include only plaintiffs of U.S. and Canadian citizenship.

On January 22, 2016, pursuant to Federal Rule of Civil Procedure 23(f), Lloyds filed with the Ninth Circuit a Petition for Permission to Appeal the class certification Order ("Rule 23(f) Petition").  ECF No. 397.  Plaintiffs filed an Opposition to the Rule 23(f) Petition on February 1, 2016, 9th Cir., No. 16-80009 ("Pls.' Rule 23(f) Opp."), ECF No. 4, and an Emergency Motion to Expedite Review of the Rule 23(f) Petition ("Emergency Motion") on February 18, 2016, 9th Cir., No. 16-80009, ECF No.

7.  On February 29, 2016, Lloyds filed an Opposition to Plaintiffs' Emergency Motion.  9th Cir., No. 16-80009, ECF No. 8.

## II.  Summary Judgment

Meanwhile, on October 16, 2015, Plaintiffs and Lloyds filed cross-motions for summary judgment.  Lloyds moved for summary judgment as to both of Plaintiffs' Counts I and II.  See Def. Lloyds' Mot. for Summ. J. at 4, ECF No. 249.  Plaintiffs moved for summary judgment only as to their Count I and requested "immediate declaratory relief" as to that claim.  Pls.' Mot. for Partial Summ. J. on Their and the Putative Class's Claim for Breach of Contract at 1, ECF No. 251.

On December 29, 2015, the parties filed their Oppositions to the respective cross-motions for summary judgment.  See Pls.' Opp'n to Def.s' MSJ, ECF No. 347; Def. Lloyds' Mem. of Law in Opp'n to Pls.' Mot. for Partial Summ. J., ECF No. 348.  On January 5, 2016, each party filed a Reply in support of its summary judgment motion.  See Reply in Supp. of Pls.' MSJ, ECF No. 358; Def. Lloyds' Reply Mem. of Law in Supp. of Lloyds' Mot. for Summ. J., ECF No. 360.

The Court held a two-day hearing regarding the cross-motions for summary judgment on January 19-20, 2016.  On February 11, 2016, the Court issued an Order Denying Plaintiffs' Motion for Partial Summary Judgment on Their and the Putative

- 4 -

Class's Claim for Breach of Contract on Count I, Denying

Plaintiffs' Request for Declaratory Relief, Granting in Part and

Denying in Part Defendant's Motion for Summary Judgment, and *Sua*

*Sponte* Granting Partial Summary Judgment to Plaintiffs on Count

II ("Summary Judgment Order").  ECF No. 419.

### III.   Lloyds' Motion to Stay and Plaintiffs' Motion to Modify the Court's Rule 16 Scheduling Order

On February 3, 2016, Lloyds filed with this Court a

Motion to Stay.  ECF No. 402.  Magistrate Judge Puglisi

thereafter suspended the parties' obligations to meet and confer

regarding notice to potential class members and to submit to the

Court a proposed class notice and distribution plan until the

Court issues a decision on the pending Motion to Stay.  ECF No.

405.

On February 23, 2016, Plaintiffs filed an Opposition

to Lloyds' Motion to Stay ("Pls.' Opp.").  ECF No. 425.  Lloyds

filed a Reply in support of its Motion ("Def.'s Reply") on March

1, 2016.  ECF No. 428.  Pursuant to Local Rule 7.2(e), the Court

elected to consider Lloyds' Motion to Stay without a hearing.

ECF No. 406.

Separately, on February 16, 2016, Plaintiffs filed a

Fourth *Ex Parte* Motion to Modify the Court's Rule 16 Scheduling

Order ("Pls.' Mot.").  ECF No. 422.  In their Motion, Plaintiffs

seek to extend the non-dispositive motions deadline until at

least three weeks after resolution of Lloyds' Rule 23(f)

Petition, as well as schedule a settlement conference, for which

the current Rule 16 Scheduling Order does not provide.[1]  Pls.'

Mot. at 1.  Plaintiffs' Motion is set to be decided by

Magistrate Judge Puglisi.  ECF No. 424.

## BRIEF SUMMARY OF FACTUAL BACKGROUND

The instant case involves the issuance by Lloyds of

certain dual currency loans (also referred to as International

Mortgage System ("IMS") loans).  Dual currency loans are

mortgage loans with a currency switching feature that allows

borrowers to switch the currency of their loans between United

States dollars and other currencies.  See TAC ¶¶ 1-3, ECF No.

100.

Lloyds is organized under the laws of the United

Kingdom but maintains branches throughout the world, including a

---

[1] In Lloyds' Reply in support of its Motion to Stay, Lloyds
argues that problems will arise if Plaintiffs' "piecemeal stay"
is granted.  Def.'s Reply at 8.  Plaintiffs want to file non-
dispositive motions up to three weeks after the Ninth Circuit
rules on Lloyds' Rule 23(f) Petition.  Pls.' Mot. at 1.

In addition to the potential problems that could arise in
this context, the Court is also concerned with problems that
have arisen regarding the lack of discovery in this case.  The
Court made a finding in its Summary Judgment Order that the LTP
charge represented an actual cost to Lloyds, but that a question
remained as to whether it was appropriate to pass that cost on
to Plaintiffs as an actual cost of funding the IMS loans.
Summary Judgment Order at 36.  The Court also noted that Lloyds'
parent, LBG, the organization most knowledgeable regarding this
and other questions the Court raised, has not been joined as a
party to this lawsuit, nor has adequate discovery been obtained
from LBG regarding the composition of the LTP.  Id. at 36 n.16.

Hong Kong branch from which it issued IMS loans to Plaintiffs.
See id. ¶¶ 1-3, 9.  Lloyds is a wholly-owned subsidiary of
Lloyds Banking Group, PLC ("LBG").  Id. ¶ 9.

### I.   The "Cost of Funds" Provision in Lloyds' IMS Loans

The IMS loans at issue in this case were made from
approximately 2005-2009 and secured by mortgages on real
property in Hawaii and California.  Id. ¶¶ 15, 21-22, 28-30.
The loans have an interest rate that is set at 1.5% above
Lloyds' "Cost of Funds," with the interest rate fixed for
successive three-month periods.  Id. ¶¶ 2, 16.  The "Cost of
Funds" is defined (with immaterial differences) in the loan
documents as:

> [T]he cost (calculated to include the costs
> of complying with liquidity and reserve
> asset requirements) in respect of any
> currency expressed as a percentage rate of
> funding for maintaining the Advance or
> Advances in that currency as conclusively
> nominated by the Bank from time to time.

Id. ¶ 2.  Interest payments on the loans are due, and the
interest rate recalculated, at the end of each three-month
period.  Id. ¶ 16.  Plaintiffs' claims for breach of contract
(Count I) and breach of an implied contractual term (Count II)
allege that Lloyds impermissibly included in its Cost of Funds
calculation a charge that constituted neither an actual cost to

- 7 -

Lloyds in funding the loans nor a liquidity requirement.  Id. ¶¶ 55-72.

## II.  Allegations Regarding Lloyds' Cost of Funds

Plaintiffs claim that, in or around 2009, Lloyds added several new basis points to its Cost of Funds calculation in order to reflect the imposition by its parent company, LBG, of a "liquidity transfer pricing" ("LTP") charge.  Id. ¶ 5.

According to Plaintiffs, the LTP charge added to the Cost of Funds an amount "based not on the actual cost of funds for the Loans, but for Lloyds' parent's significantly longer-term set of obligations."  Id.  Plaintiffs argue that this represented Lloyds' attempt to pass on to borrowers "the cost of funding Lloyds' parent's overhead and operations as a whole, not just the cost of funding their own IMS Loans."  Id. (emphasis in original omitted).  Plaintiffs further observe that, during the period when Lloyds was increasing its Cost of Funds, standard interest rate indices such as the London Inter-Bank Offered Rate ("LIBOR") decreased.  Id. ¶ 4.

As noted above, Plaintiffs filed their operative TAC on March 27, 2015.  They allege that Lloyds' inclusion of the LTP charge in its Cost of Funds constitutes a breach of the express terms of Plaintiffs' loan agreements and a breach of an implied term limiting Lloyds' discretion to change Plaintiffs' interest rates.  See id. ¶¶ 55-72.

- 8 -

## **STANDARD**

Federal Rule of Civil Procedure 23(f) permits a party to "appeal from an order granting or denying class-action certification . . . if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered." However, a petition for permission to appeal a class certification order "does not stay proceedings in the district court unless the district judge or the court of appeals so orders." Id.

In considering a motion to stay pursuant to Rule 23(f), a district court will apply the traditional four-prong test laid out by the Supreme Court: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Leiva-Perez v. Holder, 640 F.3d 962, 964 (9th Cir. 2011); Gray v. Golden Gate Nat'l Recreational Area, No. 08-CV-00722, 2011 WL 6934433, at *1 (N.D. Cal. Dec. 29, 2011) (applying the four-prong test in the context of a Rule 23(f) petition).

The Ninth Circuit has held that in the stay context, like the preliminary injunction context, these factors should be

examined on a flexible "continuum," which is "essentially the same as the 'sliding scale' approach." Leiva-Perez, 640 F.3d at 964. Under this approach, "a stronger showing of one element may offset a weaker showing of another." Id. "If anything, a flexible approach is even *more* appropriate in the stay context." Id. at 966 (emphasis in original). "Whereas the extraordinary remedy of injunction is the means by which a court directs the conduct of a party . . . with the backing of its full coercive powers, a stay operates only upon the judicial proceeding itself . . . either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability." Id. (internal quotation marks omitted).

## DISCUSSION

As a preliminary matter, the Court notes that to the extent Lloyds' Motion to Stay relies on the resolution of dispositive motions, that issue is now moot because the Court issued its Summary Judgment Order on February 11, 2016. ECF No. 419. Thus, the Court considers Lloyds' Motion solely with respect to the Rule 23(f) Petition and any resulting appeal.

### I. Likelihood of Success on the Merits

The first factor the Court must consider is whether Lloyds makes a "strong showing that [it] is likely to succeed on the merits." Id. However, Lloyds need not demonstrate that it is "more likely than not" that it will win on the merits. Id.

Rather, it will be enough if Lloyds can show that it has raised a "serious legal question" in its Rule 23(f) Petition.  Id. at 967-68.  When relying on a serious legal question to satisfy the first prong, a movant must also show that the balance of hardships tips sharply in its favor.  Brown v. Wal-Mart Stores, Inc., No. 5:09-CV-03339-EJD, 2012 WL 5818300, at *2 (N.D. Cal. Nov. 15, 2012) (citing Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011)).

Lloyds argues that its Rule 23(f) Petition raises serious legal questions the Ninth Circuit has yet to consider, namely, "whether superiority can be met by a proposed class whose significant overseas connections would permit them to relitigate in one or more foreign jurisdictions, none of which would more likely than not apply res judicata to this Court's rulings."  Motion to Stay at 12; Rule 23(f) Petition at 1.  In its Rule 23(f) Petition, Lloyds argues that approximately two thirds of the loans subject to the proposed class contain "significant non-U.S. indicia."  Rule 23(f) Petition at 5-6. Lloyds defines these as loans that contain non-U.S. "(1) borrower residency at the time of loan application; (2) last reported borrower residency; (3) last reported borrower nationality; and/or (4) subject property."  Id. at 6.  Notably, as required by the Class Certification Order, each of the

borrowers in the putative class is either a U.S. or Canadian citizen.  Class Certification Order at 38.

Lloyds maintains that the proposed class, which contains a significant number of loans with these "non-U.S. indicia," reflects an increasing trend of class actions involving members with access to foreign jurisdictions – an issue Lloyds contends the Ninth Circuit has yet to address. Rule 23(f) Petition at 14-16.  Lloyds cites to a string of Second Circuit and Southern District of New York cases as evidence of courts' growing concern regarding the *res judicata* effects of these class actions.  See, e.g., Bersch v. Drexel Firestone, Inc., 519 F.2d 974, 997 (2d Cir. 1975); In re Vivendi Universal, S.A., 242 F.R.D. 76, 105-06, 109 (S.D.N.Y. 2007).

Plaintiffs counter that Lloyds' Rule 23(f) Petition fails to present an unsettled, serious legal question, and that "no court has rejected participation by U.S. citizens as class members simply because they live abroad, based on the defendant's speculation that they may not be bound by *res judicata* if they were to sue in the other country."  Pls.' Rule 23(f) Opp. at 1.  To underscore their point, Plaintiffs note that none of the decisions Lloyds cites excluded U.S. citizens from a proposed class on the basis that they lived abroad.  Id. at 7.  Instead, Plaintiffs argue, the term "non-U.S. indicia" is

a new, overly broad standard Lloyds' counsel has attempted to create.  Id. at 1, 4.

Furthermore, Plaintiffs emphasize that the Ninth Circuit only grants Rule 23(f) Petitions in rare circumstances. Id. at 5-6; Chamberlan v. Ford Motor Co., 402 F.3d 952, 955 (9th Cir. 2005) ("We begin with the premise that Rule 23(f) review should be a rare occurrence.").  They argue that interlocutory appeals such as this one are time-consuming and disruptive to the case, and that "[a]ny novel theories of class action law Lloyds wishes to pursue will not evade review in any appeal from the final judgment, and those theories therefore cannot justify an immediate Rule 23(f) appeal."  Pls.' Rule 23(f) Opp. at 1, 6.

The Court notes that much of the case law and commentary Lloyds cites in support of its Rule 23(f) Petition fails to support a position that goes as far as Lloyds' "non-U.S. indicia" concept.  Instead, most of the discourse Lloyds references seems to focus on the threat posed by foreign citizens involved in U.S. class actions, without expressing similar concerns regarding U.S. citizens that live abroad.  See Rule 23(f) Petition at 14-16 (citing Bersch, 519 F.2d at 992, 997 (excluding from the class "all purchasers other than persons who were residents or citizens of the United States," where such United States citizens lived both in the United States and abroad); In re Vivendi, 242 F.R.D. at 105-06, 109 (certifying a

class that excluded German and Austrian citizens, but that
included citizens from the United States, France, England, and
the Netherlands and provided no distinction between American
citizens resident in the United States and those living abroad);
Rhonda Wasserman, Transnational Class Actions and
Interjurisdictional Preclusion, 86 NOTRE DAME L. REV. 313, 313
(2011) (discussing the ramifications of U.S. class actions
involving "foreign *citizens* or . . . foreign defendants," but
neglecting to specifically consider the consequences of class
actions comprised of American citizens living abroad) (emphasis
added)).

     Nevertheless, the Court also notes that this argument
implicitly recognizes that this is a novel area of law, even if
the Ninth Circuit, should it accept the Rule 23(f) Petition,
eventually agrees with Plaintiffs that Lloyds' position is
"extreme."  See Pls.' Rule 23(f) Opp. at 1.  The numerous
sources to which Lloyds cites discussing the increasing
prevalence of multinational class actions certainly reinforce
the likelihood that courts will eventually address the legal
issue Lloyds raises in its Petition.  See Rule 23(f) Petition at
14-15.

     The Court therefore finds that Lloyds has raised a
serious legal question in its Rule 23(f) Petition.  The first
factor therefore weighs in favor of granting a stay.

## II. Balance of Hardships (Including Whether Lloyds Will Be Irreparably Injured Absent a Stay and Whether Issuance of a Stay Will Substantially Injure Plaintiffs)

The Court next considers whether Lloyds will be irreparably injured absent a stay, as well as whether granting a stay will substantially injure Plaintiffs.  Because Lloyds relied on a "serious legal question" in satisfying the first prong, the balance of hardships must tip strongly in favor of Lloyds.  Brown, 2012 WL 5818300 at *2.

Lloyds contends that without a stay it will be forced to spend a significant amount of time and resources preparing for a trial only two and a half months out from now.  Motion to Stay at 16-17.  Furthermore, Lloyds emphasizes that preparing for a trial against the proposed class is an entirely different exercise from trial preparation involving a much smaller class or individual plaintiffs, meaning that the Ninth Circuit's decision on the Rule 23(f) Petition could "rearrange this case from the ground up."  Id. at 17.

Plaintiffs, on the other hand, argue that the claims are the same whether the action involves individuals or a certified class, and that Lloyds cannot credibly argue it would prepare for trial in a materially different manner depending on how the Ninth Circuit rules.  Pls.' Rule 23(f) Opp. at 16.  Lloyds counters that while Plaintiffs' burden for presenting

proof may be the same regardless of class size, the size of the class determines the stakes of this case for Lloyds.  Def.'s Reply at 9-10.  Lloyds contends that class size could therefore change everything from trial strategy to settlement negotiations.  Id. at 10.

In the Rule 23(f) context, courts have found irreparable injury where failure to issue a stay would result in "substantial time and resources being spent on the litigation." Gray, 2011 WL 6934433 at *3; Brown, 2012 WL 5818300 at *4 (finding irreparable harm to defendant due to "potentially substantial fees" and unnecessary discovery in the absence of a stay).  But see Monaco v. Bear Stearns Companies, Inc., Case No. CV 09-05438 SJO, 2012 WL 12506860, at *4 (C.D. Cal. 2012) ("[L]itigation costs in and [of] themselves generally do not constitute irreparable injury.").

The Court finds persuasive Lloyds' contention regarding the interrelatedness of its trial preparations and the size of the class.  Because a decision by the Ninth Circuit to modify or decertify the putative class could require Lloyds to overhaul its trial strategy, failure to issue a stay could result in a significant waste of litigation costs and resources. The Court therefore finds the potential for irreparable harm to Lloyds weighs in favor of a stay.

Lloyds also argues that issuance of class notice at this juncture could irreparably harm the bank by "seriously damaging goodwill." Id. at 18.  Plaintiffs counter that the borrowers on the 121 loans subject to the proposed class have known about the LTP increases for years, by virtue of the changes to interest rates they were required to pay on their loans.  See Pls.' Br. at 14-15.  Therefore, they argue, Lloyds will not suffer an irreparable reputational injury upon any premature issuance of class notice.  Id.

The Court agrees with Lloyds that premature issuance of class notice could certainly damage Lloyds' reputation. First, it is not clear whether each member of the putative class is aware of the pending litigation regarding Lloyds' IMS loan products.  Second, even if a member is aware of the litigation, that member's receipt of notice that purports to involve him in such a lawsuit increases that individual's personal investment in the case.  Aside from the heightened emotion and awareness of the lawsuit that notice would bring, such notice could also cause potential class members to hire attorneys to assist them in making a decision whether or not to opt out of the class; whereas the Ninth Circuit ultimately might rule they should not be included in the class.  The Court therefore finds that the irreparable reputational injury Lloyds could face upon premature issuance of class notice weighs in favor of a stay.

- 17 -

Next, the only harm that Plaintiffs claim is that a stay "would create prejudice for Plaintiffs and the class as the parties would lose at least two months of pretrial work and trial will almost certainly be even further delayed." Id. at 2. Yet in the same breath Plaintiffs contend that "[c]ontinuing with trial preparation will not be in vain regardless of the Circuit's ruling on the 23(f) Petition." Id. at 1-2.  Thus, if it is Plaintiffs' contention that continuing with trial preparation will not be in vain notwithstanding the possibility that the Ninth Circuit may accept the appeal – an event that could delay trial for many months – then it makes little sense to say that a decision by this Court to briefly stay proceedings while the Ninth Circuit considers the Rule 23(f) Petition will cause prejudice.

In fact, should the Ninth Circuit consider the Rule 23(f) Petition on an expedited basis in light of Plaintiffs' Emergency Motion and ultimately decline the appeal, any delay in trial will be minimal.  If anything, a decision not to stay the case could cause harm to Plaintiffs in the same way that it does Lloyds, by forcing Plaintiffs to expend time and resources preparing for an impending trial that may look vastly different depending on the outcome of the Ninth Circuit's Rule 23(f) decision.  The Court therefore finds that issuance of a stay will not substantially injure Plaintiffs.

- 18 -

Third, Lloyds also argues that failure to issue a stay could cause harm to the putative class members should the Ninth Circuit modify or decertify the proposed class. Def.'s Br. at 21. Specifically, if the parties are obligated to disseminate class notice prior to such a decision, significant confusion could result to potential class members who would be uncertain whether they needed to opt out of the class or whether they were still included in the class action at all. Id.; Brown, 2012 WL 5818300 at *4. In fact, Plaintiffs agree that the parties should not disseminate class notice until resolution of Lloyds' Rule 23(f) Petition, though they do claim that the Court can delay notice without granting a stay. Pls.' Opp. at 1, 15.

In light of the harm to Lloyds if a stay is not issued, the lack of harm to Plaintiffs if it is, and the potential harm to the putative class absent a stay, the Court finds that the balance of hardships tips sharply in favor of Lloyds. See Brown, 2012 WL 5818300 at *5 (finding that the balance of hardships tipped sharply in favor of the moving party where there was "at least some harm" to that party, a lack of substantial injury to the non-moving party, and potential harm to class members).

### III. Public Interest

The Court finds that a brief stay in proceedings would better ensure the efficient use of both judicial and party

resources while the Ninth Circuit decides whether to accept the serious legal question raised in the Rule 23(f) Petition.  <u>See Brown</u>, 2012 WL 5818300 at *5 (stating that the public has an interest in "the efficient use of judicial resources" and finding a stay would "help to ensure the proper resolution of the important issues raised in this case by preventing potentially wasteful work on the part of the court and the parties while the Ninth Circuit considers the serious legal question raised") (internal quotation marks omitted).  Thus, the public interest weighs in favor of a stay.

Upon considering the four factors a court must analyze when deciding whether or not to grant a stay, the Court finds that a stay in this circumstance is appropriate.  Specifically, Lloyds has raised a serious legal question in its Rule 23(f) Petition to the Ninth Circuit; Lloyds is at risk of irreparable financial and reputational injury absent a stay; issuance of a stay will not substantially injure Plaintiffs, and in fact, failure to issue a stay could actually be harmful to both Plaintiffs and potential class members; and a stay will better ensure the efficient use of judicial resources, which is in the public interest.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS Lloyds' Motion to Stay, and this case is STAYED as to all matters until

the Ninth Circuit rules on Lloyds' Rule 23(f) Petition.
Accordingly, the Court VACATES the currently scheduled trial
date.   In the event the Ninth Circuit denies the Petition, the
Court will issue an order setting forth dates for the trial and
final pretrial conference, and other deadlines.   Should the
Ninth Circuit grant the Petition, the case will be stayed until
further ruling by the Ninth Circuit regarding the merits of the
composition of the class.

      The Court notes that it appears at a minimum that the
trial date will have to be moved to May 31, 2016; although at
this point the Court does not know how long trial will take, and
that is a concern.   Further, a final pretrial conference will
need to be held at least two weeks prior to the trial date,
given the numerous motions in limine and issues regarding jury
instructions the Court anticipates.   The Court also notes that
Plaintiffs have requested an extension of the non-dispositive
motions deadline until three weeks after the Ninth Circuit rules
on the Rule 23(f) Petition, which could present further
scheduling issues.   Pls.' Mot. at 1.

      Finally, there is also the issue of class notice.   The
parties still need to agree on the type of notice, with that
determination dependent on further action by the Ninth Circuit.
Assuming the Ninth Circuit decides the Rule 23(f) Petition 21
days from the date of Plaintiffs' Emergency Motion, it should be

making a decision by March 10, 2016.  If the parties take two weeks to agree on class notice and give putative class members 50 days from the date notices are mailed to opt out of the class,[2] the earliest date a pretrial conference could take place is Monday, May 16, 2016.

All of that said, there has been no indication whether the Ninth Circuit is considering Lloyds' Petition as an emergency matter pursuant to Plaintiffs' Emergency Motion, considering Lloyds filed an Opposition to the Motion.  It is therefore uncertain whether the Ninth Circuit will decide the Petition by March 10, 2016 or sometime in April.[3]

In light of this Order, Plaintiffs' Fourth *Ex Parte* Motion to Modify the Court's Rule 16 Scheduling Order before Magistrate Judge Puglisi should be stayed until the Ninth Circuit rules on Lloyds' Rule 23(f) Petition and, depending on the Ninth Circuit's ruling, this Court either sets a new trial date (and final pretrial conference date and other deadlines) or stays the case pending the Ninth Circuit's further consideration

---

[2] The Court assumes an opt-out period of 50 days because this was the amount of time Lloyds and the named plaintiffs in Dugan gave to prospective class members.  Dugan v. Lloyds TSB Bank, Civ. No. 3:12-cv-02549-WHA (N.D. Cal.), ECF No. 425-11.

[3] The Court appreciates that these uncertainties impose scheduling and other difficulties with parties, their representatives, witnesses, and counsel, who are situated from Hong Kong to London.

of the merits of Lloyds' Petition regarding the appropriate

constitution of the class.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, March 7, 2016.

Alan C. Kay
Sr. United States District Judge

Willcox v. Lloyds TSB Bank, PLC, et al., Civ. No. 13-00508 ACK-RLP, Order Granting Defendant's Motion to Stay Proceedings Pending Resolution of Dispositive Motions, Rule 23(f) Petition, and Any Resulting Appeal and Vacating Trial Date.