IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                        )
BRADLEY WILLCOX, FRANK DOMINICK,        )
and MICHELE SHERIE DOMINICK,            )
                                        )
                    Plaintiffs,         )
                                        )
v.                                      )  Civ. No. 13-00508 ACK-RLP
                                        )
LLOYDS TSB BANK, PLC and DOES           )
1-15,                                   )
                                        )
                    Defendants.         )
_____)

<u>ORDER FINDING PLAINTIFFS ARE ENTITLED TO A JURY TRIAL</u>

        For the reasons discussed below, the Court finds that

Plaintiffs made a proper jury demand in the instant case;

accordingly, Plaintiffs are entitled to a jury trial.

<u>BACKGROUND</u>

        This case involves the issuance by Defendant Lloyds

TSB Bank plc's (now known as Lloyds Bank plc) ("Lloyds" or

"Defendant") of certain dual currency loans, also referred to as

International Mortgage System ("IMS") loans.  The Court and the

parties are familiar with the extensive factual and procedural

history of this case, and the Court will not repeat it here

except as necessary.

        On September 13, 2013, Plaintiff Bradley Willcox filed

a Complaint on behalf of himself and a similarly situated class

against Lloyds, in the Circuit Court of the First Circuit, State

of Hawaii.  Compl., ECF No. 1-2.  The Complaint attached a jury demand.  Id. at 17.  The Complaint brought a claim under the Hawaii Unfair and Deceptive Trade Practices Act ("UDAP"), H.R.S. §§ 480-2 and 481A-3(a)(12), and requested declaratory relief pursuant to H.R.S. §§ 632-1 et seq. and 28 U.S.C. §§ 2201 and 2202.  See Compl. ¶¶ 46-62.  On October 7, 2013, Lloyds removed the case to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332.  Notice of Removal, ECF No. 1.  Lloyds' removal filing included the jury demand from the state action. Id. Ex. A, at 17, ECF No. 1-2.

On December 3, 2013, Willcox filed a First Amended Complaint ("FAC"), adding Frank Dominick as a named plaintiff. ECF No. 25.  On June 10, 2014, the Court granted Lloyds' Motion to Dismiss the FAC.  Order Granting Def.'s Mot. to Dismiss, ECF No. 49.  The Court concluded that the Hong Kong choice-of-law provision in the parties' contractual agreements precluded the assertion of Hawaii and U.S. statutory claims; accordingly, it dismissed the FAC in its entirety.  Id. at 46.  However, the Court granted Willcox and Dominick leave to file a further amended complaint.  Id.

On August 14, 2014, Willcox and Dominick filed a Second Amended Complaint ("SAC"), bringing claims under Hong Kong law for Breach of Contract (Count I), Breach of an Implied Term Limiting Lloyds' Discretion to Change the Interest Rate

2

(Count II), and declaratory relief (Count III).  See SAC ¶¶ 54-78, ECF No. 61.

On September 19, 2014, Lloyds moved to dismiss the SAC on grounds of *forum non conveniens* and failure to state a claim. Def. Lloyds' Mot. to Dismiss the Claims Asserted in the SAC, ECF No. 62.  On December 23, 2014, the Court issued an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss.  ECF No. 73.  The Court denied Lloyds' motion to dismiss for *forum non conveniens* and for failure to state a claim as to Counts I and II of the SAC.  However, it granted Lloyds' motion as to Willcox and Dominick's claim for declaratory relief (Count III).  Id. at 35-36.

On January 9, 2015, Lloyds moved to join Michele Sherie Dominick, wife of named Plaintiff Frank Dominick, as a party.  ECF No. 76.  Magistrate Judge Puglisi issued an Order Granting Defendant Lloyds' Motion to Join Michele Sherie Dominick as a Party on March 16, 2015.  ECF No. 94.  That order directed that an amended complaint naming Ms. Dominick as a party to this action be filed by March 27, 2015.  Id. at 10.

Plaintiffs filed the operative Third Amended Complaint ("TAC") on March 27, 2015.  ECF No. 100.  The TAC names Frank Dominick, Michele Sherie Dominick, and Bradley Willcox (collectively, "Plaintiffs") as class representatives and brings claims for Breach of Contract (Count I) and Breach of an Implied

Term Limiting Lloyds' Discretion to Change the Interest Rate (Count II).  Id. ¶¶ 6-8, 55-72.[1]

The FAC, SAC, and TAC did not contain jury demands.

On February 11, 2016, the Court issued an Order Denying Plaintiffs' Motion for Partial Summary Judgment on Their and the Putative Class's Claim for Breach of Contract on Count I, Denying Plaintiffs' Request for Declaratory Relief, Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, and *Sua Sponte* Granting Partial Summary Judgment to Plaintiffs on Count II ("Summary Judgment Order").  ECF No. 419.

On August 15, 2016, the Court held a hearing on Lloyds' Motion to Compel Plaintiffs to Present a Trial Plan. During the hearing, Lloyds for the first time questioned the basis for a jury trial in this action.  The same day of the hearing, the Court ordered the parties to file briefs addressing whether Plaintiffs were entitled to a jury trial.  ECF No. 472. The parties filed their respective briefs on August 22, 2016. ECF Nos. 474, 475.  On August 30, 2016 the Court issued a minute order allowing the parties to file responses to the opposing parties' briefs.  The parties filed their responsive briefs on September 6, 2016.  ECF No. 490, 492.

---

[1] The Court notes that the TAC includes requests for court-ordered relief (a permanent injunction and a judicial declaration) as well as a request for compensatory damages. TAC ¶ 78.

## DISCUSSION

Only two months prior to the start of trial, Lloyds for the first time claims that Plaintiffs are not entitled to a jury trial in this matter.  Lloyds argues that because the character of the lawsuit has changed since Plaintiffs filed the original Complaint, the jury demand included in the original Complaint does not satisfy Federal Rule of Civil Procedure ("Rule") 38(b).  Lloyd's Br. Regarding Pls.' Failure to Demand a Jury Trial ("Lloyd's Br."), at 10-14, ECF No. 475.[2]

Rule 38(b) governs jury demands.  Pursuant to Rule 38(b), a party seeking to have an issue tried before a jury must serve "the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served."  "[A] party may specify the issues that it wishes to have tried by a jury; otherwise, it is considered to have demanded a jury trial on all issues so triable."  Fed. R. Civ. P. 38(c).  "A party waives a jury trial unless its demand is properly served and filed."  Fed. R. Civ. P. 38(d).

---

[2] Lloyds does not dispute that Plaintiffs' state court jury demand remained effective upon removal.  Lloyds' Supp. Br. Regarding Pls.' Failure to Demand a Jury Trial ("Lloyds' Supp. Brief"), at 3, ECF No. 492; see Fed R. Civ. P. 81(c) ("A party who, before removal, expressly demanded a jury trial in accordance with state law need not renew the demand after removal.").

"[T]he purpose of a jury demand is to inform the court and opposing counsel that certain issues will be tried to a jury." Lutz v. Glendale Union High Sch., 403 F.3d 1061, 1065 (9th Cir. 2005). Importantly, the Ninth Circuit has repeatedly held that it will "'indulge every reasonable presumption against waiver' of the jury trial right." California Scents v. Surco Prod., Inc., 406 F.3d 1102, 1108 (9th Cir. 2005) (quoting Aetna Ins. Co. v. Kennedy ex rel. Bogash, 301 U.S. 389, 393 (1937)); see also Lutz, 403 F.3d at 1064.

With respect to amended complaints, the Ninth Circuit has determined that what is relevant in terms of a jury demand is "whether the amended complaint raises an 'issue' for the purpose of Rule 38(b) not previously raised in the original complaint." California Scents, 406 F.3d at 1106. "Rule 38(b) is concerned with issues of fact" as opposed to legal issues. Id. (quoting Lutz, 403 F.3d at 1066); see also Las Vegas Sun, Inc. v. Summa Corp, 610 F. 2d 614, 620 n.5 (9th Cir. 1979); Trixler Brokerage Co. v. Ralston Purina Co., 505 F.2d 1045, 1050 (9th Cir. 1974) ("Manifestly, the issue contemplated by the Rule is one of fact"). Specifically, for purposes of Rule 38, the Court must determine whether issues in the original complaint and the amended complaint "turn on the same matrix of facts." Lutz, 403 F.3d at 1066 (quoting Las Vegas Sun, 610 F.2d at 620).

In Lutz, for example, the court considered whether a plaintiff who had waived her right to a jury trial with respect to the original complaint by failing to make a timely jury demand could nevertheless request a jury trial in an amended complaint.  403 F.3d 1061.  The plaintiff's original complaint raised claims under the Americans with Disabilities Act ("ADA"), while the amended complaint raised new claims under the Rehabilitation Act and the Arizona Civil Rights Act.  Id. at 1066.  Although the legal issues had clearly changed between the two complaints, the Court determined that the amended complaint did not renew the right to request a jury trial "[b]ecause it is clear that 'the issues in the original complaint and the amended complaint turn on the same matrix of facts.'"  Id. (quoting Las Vegas Sun, 610 F.2d at 620).

The Ninth Circuit extended the reasoning in Lutz and related cases to resolve the question of whether, under Rule 38, a plaintiff could rely on the defendant's jury trial demand as to its counterclaims to "preserve [its] right to a jury trial on the claims pled in its complaint."  California Scents, 406 F.3d at 1104.  The Court sought to determine whether the "issues" in the complaint, as defined under Rule 38, "were embraced by [the defendant's] jury demand."  Id. at 1106.  The relevant claims in the complaint were for trade dress infringement and unfair competition related to the manufacturing, packaging, and

7

labeling of air fresheners.  Id. at 1104.  California Scents claimed that defendant Pestco manufactured "nearly identical" air freshener products.  Id.  Pestco raised counterclaims for business disparagement, business defamation, conspiracy to disparage and defame, and false advertising.  Id.  The first three counterclaims were based on allegations that California Scents "injured Pestco's reputation and sales by falsely representing to sales representatives and competitors in the air freshener industry that Pestco 'copied and/or infringed upon' California Scents's air freshener trade dress."  Id.

The court acknowledged that the legal issues raised by the parties were distinct and noted that some of the facts needing to be proven did not overlap.  The Court stated, "To prevail in its business defamation and business disparagement counterclaims, Pestco would have to prove facts that were unnecessary to California Scents's trade dress infringement claims, and vice-versa."  Id. at 1108-09.  In this respect, the court compared the elements required to prove common law disparagement with the elements required to prove trade dress infringement.  Id.  Although there were clear differences between the elements and facts required to prove the claims, the court concluded that the claims "turn[ed] on the same matrix of facts, and concern[ed] the same general area of dispute," i.e., "whether Pestco infringed on California Scents's trade dress."

8

Id. at 1109 (citations omitted).  The Court held, "The
substantial factual overlap underpinning the parties' respective
claims compels our conclusion that Pestco's jury demand on its
counterclaims was directed, at least in part, to the same
'issues' as California Scent's complaint."  Id.  Accordingly,
the court determined that California Scents reasonably relied on
Pestco's jury demand to preserve its right to a jury trial on
its complaint.  Id.

        Applying this precedent to the instant case, the
dispositive issue becomes whether the original complaint and the
amended complaints revolve around the "same matrix of facts" so
that Plaintiffs were not required to restate their jury demand.
See Williams v. Agilent Techs., No. 04-1810 MMC, 2004 WL
2848005, at *1 (N.D. Cal. Dec. 10, 2004) ("While the FAC
included additional legal claims against defendant, the new
claims are based on the 'same matrix of facts' alleged in the
original complaint, and, consequently, plaintiffs were not
required to restate their jury demand after defendant answered
the FAC.").  The Court finds that the standard is met here.
Indeed, although the claims raised by Plaintiffs have changed
since the original Complaint, throughout the litigation
Plaintiffs have consistently maintained—and alleged facts
demonstrating—that Lloyds breached its loan agreements by
arbitrarily increasing interests rates and that Lloyds acted

9

dishonestly by "concealing the wrongful nature of its acts." See Compl. ¶ 1; SAC ¶ 1; TAC ¶ 1.

According to Lloyds, the litigation significantly changed between the filing of the original Complaint and the SAC and as a result, Plaintiffs are not entitled to a jury trial. However, a comparison of the original complaint and the SAC demonstrates that although the legal issues have changed, the matrix of relevant facts underpinning the claims remains the same.  To start, in the "Introduction" section of both the Complaint and the SAC, Plaintiffs note that their "claims arise from LLOYDS' marketing and sale of complex variable rate, and often variable currency, loans (the "Loans")."  Compl. ¶ 1; SAC ¶ 1; see also TAC ¶ 1.  The complaints then allege that "[w]ith respect to the Loans, LLOYDS breached its agreements with consumers by" "arbitrarily increasing applicable interest rates" and "actively concealing the wrongful nature of its acts." Compl. ¶ 1; SAC ¶ 1; see also TAC ¶ 1.[3]

The Introduction sections proceed to explain the IMS loan program at issue, including the "Cost of Funds"[4] provision

_____

[3] The Complaint also alleges that Lloyds "engag[ed] in unfair and deceptive" practices while the SAC maintains that LLoys "breach[ed] an implied duty to act honestly and in good faith."  Id.

[4] The "Cost of Funds" is defined (with immaterial differences) in the loan documents as:

(continued . . . )

10

and allege that "Lloyds arbitrarily increased the variable interest rate described in the Loan Documents to the detriment of" Plaintiffs. Compl. ¶¶ 3-5; SAC ¶¶ 2-4; <u>see also</u> TAC ¶¶ 2-4. The complaints further allege that after 2008 (or 2009), Lloyds changed its method for calculating the "Cost of Funds" causing injury to many in the class. Compl. ¶ 6; SAC ¶ 5; <u>see also</u> TAC ¶ 5. With respect to the latter, both complaints note that Lloyds added several new basis points to its Cost of Funds calculation in order to reflect the imposition by its parent company of a "liquidity transfer pricing" ("LTP") charge. <u>Id.</u> According to both complaints, the LTP charge added to the Cost of Funds an amount "based not on the actual cost of funds for the Loans, but for Lloyds' parent's significantly longer-term set of obligations." <u>Id.</u> The complaints further allege that this represented Lloyds' attempt to pass on to borrowers "the cost of funding" Lloyds' "parent's overhead and operations as a whole, not just the cost of funding their own IMS Loans."

---

( . . . continued)

> [T]he cost (calculated to include the costs of complying with liquidity and reserve asset requirements) in respect of any currency expressed as a percentage rate of funding for maintaining the Advance or Advances in that currency as conclusively nominated by the Bank from time to time.

Compl. ¶ 3; SAC ¶ 2; TAC ¶ 2.

Compl. ¶ 6 (emphasis omitted); SAC ¶ 5 (emphasis omitted); <u>see also</u> TAC ¶ 5 (emphasis omitted).

The "General Allegations" section of the complaints are also markedly similar.  Both complaints explain the relevant interest rate provision in the Loan Documents and proceed to allege that Lloyds arbitrarily increased the interest rates and its "Cost of Funds" to the harm of Plaintiffs.  Compl. ¶¶ 13-20; SAC ¶¶ 12-19; <u>see also</u> TAC ¶¶ 13-20.  The definition of the "Class" in the complaints is also identical (although the SAC no longer contained the "Injunction Sub-class").  Compl. ¶ 31, SAC ¶ 39; <u>see also</u> TAC ¶ 40.  Turning to the claims for relief, although the legal issues have changed, both complaints maintain that Lloyds concealed information relevant to the interest rates and misled Plaintiffs.  Compl. ¶ 49, SAC ¶¶ 60-61, 70; <u>see also</u> TAC ¶¶ 61-62, 71.

Despite the similarities between the factual allegations in the complaints, Lloyds maintains that the SAC provides a "different theory of liability, claims and issues" and thus, Plaintiffs were required to renew their jury demand.  Lloyds' Supp. Brief, at 4.  In support for its claim, Lloyds compares the elements required to prove a UDAP claim under Hawaii law with the elements required to prove Plaintiffs' breach of contract claim.  <u>Id.</u> at 5-6.  Lloyds' argument misses the mark.  As the Ninth Circuit determined in <u>California Scents</u>,

although the elements required to prove the claims at issue may
be distinct, what matters for purposes of Rule 38(b) is that the
claims "'turn on the same matrix of facts' and 'concern[] the
same general area of dispute.'"  406 F.3d at 1109 (alteration in
original) (citations omitted).  The court also acknowledged that
even if some of the facts necessary to prove the claims differ,
the "same matrix of facts" standard can still be satisfied.  <u>See</u>
<u>id.</u>

Lloyds also argues that the "matrix of facts" changed
at the time of the filing of the SAC, claiming that the
Complaint was "fraud-based" and involved deception of consumers,
while the SAC (and the TAC) do not contain such factual
allegations.  Lloyds' Br., at 12-13.  However, Lloyds overstates
the differences between the factual issues that make up the so-
called "fraud-based" claims and the claims currently alleged.
For example, Lloyds cites to ¶ 50 of the Complaint as an example
of a "fraud-based" factual allegation that is no longer part of
the case.  <u>Id.</u> at 12.  Lloyds is correct that the legal claim
contained in ¶ 50, i.e., that Lloyds' conduct was unfair and
deceptive pursuant to H.R.S. Chapter 480, is no longer at issue.
<u>See</u> Compl. ¶ 50.  However, as Plaintiffs argue, when read
together with ¶ 49, the allegations provide that Lloyds acted
deceptively toward borrowers by manipulating interest rates and
sending an inadequate "Frequently Asked Questions" document

13

("FAQ") regarding the "Cost of Funds" calculations. Id. ¶¶ 49-50. As noted above, the SAC and TAC contain similar allegations, and also cite to the FAQ, noting that Lloyds concealed facts relevant to the interest rate issue in the FAQ. SAC ¶ 61; TAC ¶ 62.

Indeed, contrary to Lloyds' assertions, the SAC and TAC still allege facts regarding Lloyds' concealment and dishonesty. Plaintiffs continue to allege that Lloyds manipulated the Cost of Funds, arbitrarily increased interest rates, improperly passed the LTP charge from its parents to its borrowers, concealed the Cost of Funds calculation from the borrowers, and acted deceptively with respect to the basis of the increased interest charges. As Plaintiff argues, the SAC and TAC allege facts regarding Lloyds' allegedly wrongful behavior in support of their claim that Lloyds violated the Nash standard,[5] under Hong Kong Law.[6] Accordingly, and for the

_____

[5] In Nash, et al. v. Paragon Fin. PLC, [2001] EWCA Civ. 1466 (15 Oct. 2001), the court determined as follows with respect to the exercise of a lender's discretion to set interest rates:

> The [lender] is not a charitable institution. Its aim is to make a profit by lending money. It follows that if it encounters financial difficulties, it may feel obliged to raise the interest rates paid by its borrowers. In deciding whether to raise interest rates, it will have to make fine commercial judgments. But if it decides to take that course in order to overcome financial difficulties, it is not acting

(continued . . . )

14

additional reasons discussed above, the Court determines that
the original Complaint and the successive complaints turn on the
same matrix of facts.

The Court is also cognizant of the purpose of a jury
demand as put forth by the Ninth Circuit, i.e., to give notice
to the "court and opposing counsel that certain issues will be
tried by a jury." Lutz, 403 F.3d at 1065.  Here, after the SAC
was filed, Magistrate Judge Puglisi issued four scheduling
orders, each stating the date that "JURY trial" would begin.
See ECF Nos. 92, 178, 436, 441.  The Court also issued a Minute
Order on June 14, 2016, noting the date that jury selection
would be held.  ECF No. 438.  Under these circumstances, Lloyds'
contention that it was unaware that Plaintiffs intended that
their claims be tried by a jury until August 15, 2016 is
suspect.  See Lloyds' Br., at 16.  Indeed, the Court is troubled
by Lloyds' failure to raise the jury trial issue until two

---

( . . . continued)
        dishonestly, capriciously or in an arbitrary
        manner.  It is not taking into account an
        irrelevant consideration.  Nor is it acting in a
        way which is so unreasonable that it can be said
        of it that no reasonable lender would take that
        course if placed in that situation.

Id. ¶ 47.

        [6] The Court also agrees with Plaintiffs that Lloyds has
overstated the importance of the wrongful foreclosure
allegations in the original Complaint.

15

months prior to trial, particularly given that the Court intended to proceed with a jury trial regarding Plaintiffs' remaining claims, as noted in the above-cited documents.

In sum, the Court concludes that because there is "substantial factual overlap underpinning" the claims in the original Complaint and the successive complaints (particularly the SAC and the operative TAC), Plaintiffs were not required to renew their jury demand. See California Scents, 406 F.3d at 1109. In reaching this conclusion, the Court is guided by Ninth Circuit precedent explaining the purpose of a jury demand and the guidance that courts should "'indulge every reasonable presumption against waiver' of the jury trial right." Id. at 1108 (citation omitted). Because the Court concludes that Rule 38(b) was satisfied, the Court need not consider Plaintiffs' request to exercise its discretion to order a jury trial under Rule 39.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that

Plaintiffs are entitled to a jury trial in this case.


IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 16, 2016.



_____
Alan C. Kay
Sr. United States District Judge


<u>Willcox v. Lloyds TSB Bank, plc, et al.</u>, Civ. No. 13-00508 ACK-RLP, Order Finding Plaintiffs are Entitled to a Jury Trial.