IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____

BRADLEY WILLCOX, FRANK DOMINICK,           )
and MICHELE SHERIE DOMINICK,               )
                                           )
              Plaintiffs,                  )
                                           )
v.                                         )  Civ. No. 13-00508 ACK-RLP
                                           )
LLOYDS TSB BANK, PLC and DOES              )
1-15,                                      )
                                           )
              Defendants.                  )
_____)

**ORDER PRELIMINARILY APPROVING DEFENDANT'S OFFER OF COMPROMISE,
PRELIMINARILY APPROVING PLAINTIFFS' MOTION TO APPROVE AND ENTER
JUDGMENT, PRELIMINARILY APPROVING PLAINTIFFS' REQUEST FOR
ATTORNEYS' FEES AND COSTS, AND PRELIMINARILY APPROVING
PLAINTIFFS' REQUEST FOR INCENTIVE AWARD FOR CLASS REPRESENTATIVE**

For the reasons set forth below, the Court

preliminarily APPROVES the Offer of Compromise by Defendant

Lloyds TSB Bank plc, now known as Lloyds Bank plc, Pursuant to

Federal Rule of Civil Procedure 68 ("Offer of Judgment"). ECF

No. 539-2. Accordingly, the Court preliminarily APPROVES

Plaintiffs' Motion to Approve and Enter Judgment ("Motion").

ECF No. 547. The Court further preliminarily APPROVES

Plaintiffs' request for $800,000.00 as an award of attorneys'

fees and costs, as described in Plaintiffs' Petition in Support

of Distribution of Fees and Expenses, ECF No. 556; and

preliminarily APPROVES Plaintiffs' request for $10,000.00 as an

- 1 -

award for Dr. Bradley Willcox for his role as class representative in this action, ECF No. 558.

## BACKGROUND

The instant case involves the issuance by Defendant Lloyds TSB Bank plc, now known as Lloyds Bank plc ("Lloyds"), of certain dual currency loans, also referred to as International Mortgage System ("IMS") loans.[1]  The Court and the parties are familiar with the extensive factual and procedural history of this case, and the Court will not repeat it here except as necessary.

On March 27, 2015, Plaintiffs filed the operative Third Amended Complaint ("TAC").  ECF No. 100.  The TAC names Frank Dominick, Michele Sherie Dominick, and Bradley Willcox (collectively, "Plaintiffs") as class representatives and brings claims against Lloyds for Breach of Contract (Count I) and

---

[1] The Court notes that several other class actions have been filed against Lloyds that involved Lloyds' IMS loan product. The Dugan litigation was a consolidated action in the Northern District of California comprised of both Dugan, et al. v. Lloyds TSB Bank, plc, Case No. 3:12-cv-02549-WHA (N.D. Cal.), and another case that had been filed in the Northern District of California, Osmena, et al. v. Lloyds TSB Bank, plc, et al., Case No. 3:12-cv-02937-WHA (N.D. Cal.).  The parties in Dugan ultimately settled.  Another related action, Washington Land Development, LLC v. Lloyds TSB Bank, plc, Case No. 2:14-cv-00179-JCC (W.D. Wash.), was filed in the Western District of Washington and ultimately voluntarily dismissed.  Various factors in those cases distinguish them from the instant action.

Breach of an Implied Term Limiting Lloyds' Discretion to Change the Interest Rate (Count II).  Id. ¶¶ 6-8, 55-72.

## I.  Class Certification

On July 15, 2015, Plaintiffs filed a Motion for Class Certification pursuant to Federal Rule of Civil Procedure ("Rule") 23.  ECF No. 156.  After briefing and oral argument from the parties, Magistrate Judge Puglisi issued his Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion for Class Certification ("F&R") on November 12, 2015. ECF No. 317.  The F&R recommended: (1) certifying the instant case as a class action; (2) appointing Dr. Willcox (but not the Dominicks) as class representative; (3) appointing Alston Hunt Floyd & Ing and Steptoe & Johnson LLP as class counsel; (4) directing the parties to meet and confer regarding notice to class members; (5) denying any remaining relief requested in Plaintiffs' class certification motion; and (6) defining the certified class as:

> All persons and entities who entered prior to August 2009 into an IMS loan with Lloyds that contained a Hong Kong choice-of-law provision and an interest rate provision based upon Cost of Funds and who are, or were at any time during entering into such an IMS loan, residents or citizens of the State of Hawaii, or owners of property in Hawaii that was mortgaged to secure any such IMS loan.

Id. at 31-32.  Lloyds filed Objections to the F&R on November 25, 2015, ECF No. 332, to which Plaintiffs filed a Response on December 9, 2015, ECF No. 335.  The parties also submitted supplemental Reply and Sur-Reply briefs on December 17, 2015 and December 28, 2015, respectively.  ECF Nos. 337, 340.

On January 8, 2016, the Court issued an Order Adopting in Part, Rejecting in Part, and Modifying in Part the Findings and Recommendations to Grant in Part and Deny in Part Plaintiffs' Motion for Class Certification ("Class Certification Order").  ECF No. 366.  For the reasons explained therein, the Court adopted the F&R over Lloyds' objections, except as to the class definition, which the Court modified to include only plaintiffs of United States and Canadian citizenship.

On January 22, 2016, pursuant to Rule 23(f), Lloyds filed with the Ninth Circuit a Petition for Permission to Appeal the Class Certification Order ("Rule 23(f) Petition").  ECF No. 397.  The Ninth Circuit issued its Order denying the Rule 23(f) Petition on May 16, 2016.  ECF No. 430.

On July 15, 2016, the Court instructed the parties to submit for the Court's approval a proposed form of class notice informing potential class members of this lawsuit.  ECF No. 446. Plaintiffs submitted a proposed notice on July 19, 2016, ECF No. 448-2, and the Court provided its comments on the proposed notice on July 21, 2016, ECF No. 449.  After the Court provided

- 4 -

Plaintiffs with one more round of comments on the proposed notice, a third party settlement administrator mailed the final Class Notice to the borrowers of 130 IMS loans that fit the class definition on August 5, 2016, and to the borrowers of two additional IMS loans on August 10, 2016.  See ECF Nos. 453, 458, 554-3.  The Class Notice informed potential class members that they could opt out of the class if they postmarked an "Exclusion Request" to the third party settlement administrator by September 30, 2016.  See ECF No. 554-2 at 5.  The administrator received one opt-out request on August 19, 2016.  ECF No. 554-3.

### II.  Summary Judgment

Earlier, on October 16, 2015, Plaintiffs and Lloyds filed cross-motions for summary judgment.  Lloyds moved for summary judgment as to both of Plaintiffs' Counts I and II.  ECF No. 249.  Plaintiffs moved for summary judgment only as to their Count I and requested "immediate declaratory relief" as to that claim.  ECF No. 251.

The Court held a two-day hearing regarding the cross-motions for summary judgment on January 19-20, 2016.  On February 11, 2016, the Court issued an Order Denying Plaintiffs' Motion for Partial Summary Judgment on Their and the Putative Class's Claim for Breach of Contract on Count I, Denying Plaintiffs' Request for Declaratory Relief, Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, and *Sua*

*Sponte* Granting Partial Summary Judgment to Plaintiffs on Count II ("Summary Judgment Order").  ECF No. 419.

In its Summary Judgment Order, the Court made several findings as a matter of law with respect to Count I:  (1) that the Cost of Funds provision is not ambiguous; (2) that the facility agreements do not prescribe a specific methodology for calculating the Cost of Funds component of the IMS loans' interest rate; do not specifically require the Cost of Funds component to track 3-month LIBOR; and do not specifically require Lloyds to fund Plaintiffs' loans with short-term money; (3) that the LTP charge was clearly an actual cost to Lloyds imposed on it by its parent company, Lloyds Banking Group plc ("LBG"); (4) that the Cost of Funds provision allows Lloyds to include in its Cost of Funds calculation both liquidity costs and liquidity requirements, and does not specifically restrict Lloyds from altering the manner in which it calculates cost for purposes of determining the interest rate on the loans; and (5) that Lloyds has some degree of discretion with respect to the foregoing findings.  Summary Judgment Order at 24, 36-37.

However, the Court noted that several issues of material fact remained, including (1) whether, prior to 2009, Lloyds was itself funding Plaintiffs' IMS loans with 90-day money, and if so, whether it should have continued utilizing such short-term funding; (2) if Lloyds was funding the IMS loans

itself prior to 2009, whether it was appropriate to change the funding to LBG's centralized funding model; (3) whether, prior to 2009, Plaintiffs' loans were funded through LBG's centralized funding model, and if so, whether the LTP charge added in 2009 was simply a different methodology appropriately applied to the computation of the Cost of Funds; (4) whether Lloyds appropriately acted pursuant to regulatory requirements or recommendations; (5) whether it was appropriate to pass the LTP charge on to Plaintiffs as an actual cost of funding the IMS loans; and (6) how the LTP charge was computed.  Id. at 35-36.

With respect to Count II, the Court found that an implied term in the facility agreements limits Lloyds' exercise of the discretion afforded it by the Cost of Funds provision. Id. at 41.  While Lloyds argued that no implied term should be read into the facility agreements in the first place, both parties agreed that the case Nash, et al. v. Paragon Fin. PLC, [2001] EWCA Civ. 1466 (15 Oct. 2001), was instructive regarding the breach of any implied term found to exist in the facility agreements.  See ECF No. 249 at 24, 29-31; ECF No. 347 at 36; Transcript of Hearing at 118, Jan. 19, 2016, ECF No. 403; Transcript of Hearing at 34, Jan. 20, 2016, ECF No. 404.  The Court therefore distilled a standard from that case to govern the exercise of a lender's discretion under the implied term. Summary Judgment Order at 43-45.  The Court found that, "when

exercising its discretion to change interest rates, Lloyds must do so in a manner that comports with 'purely commercial considerations,' including whether it 'is in financial difficulty because it is obliged to pay higher rates on interest to the money market'; however, Lloyds must refrain from acting 'dishonestly, for an improper purpose, capriciously, or arbitrarily,' or in a manner so unreasonable that no reasonable lender would do the same." <u>Id.</u> at 45 (citing <u>Nash</u>, [2001] EWCA Civ. 1466).  For ease of reference, the Court referred to this standard as the "<u>Nash</u> standard."

The Court concluded that, as with Count I, various questions of material fact remained as to Count II that precluded the Court from determining whether Lloyds had breached an implied term limiting its discretion to adjust interest rates, as determined by the <u>Nash</u> standard.  <u>Id.</u> at 46-47.

### III.   Rule 68 Offer of Judgment and Distribution of Judgment Amount

On September 11, 2016, Lloyds signed and delivered to Plaintiffs' counsel the Offer of Judgment.  Decl. of Glenn T. Melchinger ¶ 3, ECF No. 539-1.  Plaintiffs' counsel signed the Offer of Judgment and delivered it upon the Court on September 22, 2016.  ECF No. 539.  Accordingly, the Court stayed all pretrial proceedings and vacated the October 18, 2016 trial date.  ECF No. 544.

Pursuant to the Offer of Judgment, Plaintiffs and Lloyds agree as follows:  (1) judgment shall be entered in favor of Plaintiffs and each borrower that has not opted out of the certified class as of September 25, 2016 (the "Judgment Class"); (2) Lloyds shall pay $2,000,000.00 in full and final satisfaction of all relief sought in the TAC, with payment to be apportioned among the Judgment Class, the class representative, and class counsel in a manner to be determined by class counsel and the class representative;[2] (3) nothing in the Offer of Judgment shall be deemed an admission by Lloyds of any fact or allegation relating to its alleged liability; and (4) the Offer of Judgment is conditioned on acceptance by the entire Judgment Class.

As noted, the Offer of Judgment purports to bind the named plaintiffs to this suit, as well as "each borrower on each loan that has not opted out of the certified class as of September 25, 2016."  Offer of Judgment at 2.  While the initial Class Notice mailed to members provided an opt-out deadline of September 30, 2016, no member opted out of the class between September 25 and September 30, obviating any potential problems that could arise as a result of the conflict between the two deadlines.  Indeed, the only individual to opt out of the class

---

[2] The class representative in the instant action is Dr. Willcox.

mailed his Exclusion Request to the settlement administrator in August.  Accordingly, by the terms of the Offer of Judgment, the borrowers of 131 IMS loans will be bound by the Judgment.

With respect to the distribution of the Judgment, on October 3, 2016, Plaintiffs submitted a Petition in Support of Distribution of Fees and Expenses ("Petition"), requesting that $800,000.00 of the Judgment amount be apportioned to class counsel as an award for attorneys' fees and costs.  ECF No. 556. On October 6, 2016, Plaintiffs filed a Supplemental Brief in Support of a Compensation Award for Class Representative ("Supplemental Brief"), requesting that Dr. Willcox be granted a compensation award of $10,000.00 for his role as class representative.  ECF No. 558.

The Court held a hearing on December 7, 2016 to determine whether the Offer of Judgment is "fair, reasonable, and adequate," in accordance with Rule 23(e)(2).[3]  During the

---

[3] In two prior Minute Orders dated September 22, 2016, ECF No. 544, and September 28, 2016, ECF No. 548, the Court recognized that a potential conflict exists between Rule 23(e)(2), which requires the Court to hold a hearing to determine whether any settlement, voluntary dismissal, or compromise that would bind class members is "fair, reasonable, and adequate," and Rule 68(a), which directs the clerk to enter judgment upon a party's acceptance of an offer of judgment.
While several courts, including the Supreme Court, have likewise acknowledged this conflict, neither the Court nor the parties were able to locate any binding authority regarding how to reconcile the two rules.  See Marek v. Chesny, 473 U.S. 1, 33 n.49 (1985) (noting that Rule 68 does "not mesh with [Rule
(continued . . .)

hearing the Court also heard arguments regarding Plaintiffs'

Motion and the distribution of the Judgment amount.

### STANDARD

Under Rule 23(e), "[t]he claims, issues, or defenses

of a certified class may be settled, voluntarily dismissed, or

compromised only with the court's approval."  "The purpose of

Rule 23(e) is to protect the unnamed members of the class from

---

23(e)'s] careful supervision" and that "Rule 68 sets a
nondiscretionary 10-day limit on the plaintiff's power of
acceptance – a virtually impossible amount of time in many cases
to consider the likely merits of complex claims of relief, give
notice to class members, and secure the court's approval"); Gay
v. Waiters' and Dairy Lunchmen's Union Local No. 30, 86 F.R.D.
500, 503 n.8, 504 (N.D. Cal. 1980) (noting that "Rule 68 may
. . . conflict with the policies and principles underlying Rule
23," and that a "conflict between the rules would occur where
the court under 23(e) disapproves the Rule 68 offer as a basis
for settlement although acceptable to the class representative
and the plaintiff class ultimately obtains a less favorable
judgment").
     Observing that at least one other court has required a Rule
23(e)(2) fairness hearing when presented with a Rule 68 offer of
judgment, the Court determined that a fairness hearing was
appropriate here.  See Carducci v. Aetna U.S. Healthcare, No.
CIV.A. 01-4675(JBS), 2003 WL 22207204, at *5 (D.N.J. Apr. 16,
2003) ("[W]hen an offer of judgment is made in a class action,
the court must hold a Rule 23(e) fairness hearing to approve the
judgment *before judgment is entered* according to the offer.")
(emphasis added); see also Wright and Miller, 12 Federal
Practice & Procedure Civil 2d § 3005 ("Once a Rule 68 offer is
accepted, either party may file the offer and acceptance, and
the clerk must then enter judgment.  In general, it is said that
the court has no choice about entering the agreed judgment.  But
this general statement is too broad to encompass all instances
in which Rule 68 offers are made . . . [I]n class actions the
court has an independent duty under [R]ule 23(e) to decide
whether a settlement is acceptable, and Rule 68 cannot remove
that authority and duty.").

unjust or unfair settlements affecting their rights." In re
Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008).
Before it may approve a class-action settlement that will bind
class members, the Court must hold a hearing to determine
whether the settlement is "fair, reasonable, and adequate."
Fed. R. Civ. P. 23(e)(2); Lane v. Facebook, Inc., 696 F.3d 811,
818 (9th Cir. 2012).  "[T]he decision to approve or reject a
settlement is committed to the sound discretion of the trial
judge because he is 'exposed to the litigants, and their
strategies, positions and proof.'"  Hanlon v. Chrysler Corp.,
150 F.3d 1011, 1026 (9th Cir. 1998) (quoting Officers for
Justice v. Civil Serv. Comm'n of the City & Cty. of S.F., 688
F.2d 615, 626 (9th Cir. 1982)).  Importantly, the Court must
consider the fairness of the settlement agreement as a whole,
rather than assessing its component parts.  Id.  The Court may
not "delete, modify or substitute certain provisions" of the
settlement agreement; "[t]he settlement must stand or fall in
its entirety."  Id. (citation omitted).

      Furthermore, "the question whether a settlement is
fundamentally fair within the meaning of Rule 23(e) is different
from the question whether the settlement is perfect in the
estimation of the reviewing court."  Lane, 696 F.3d at 819.  The
Court's "only role in reviewing the substance of that settlement
is to ensure that it is 'fair, adequate, and free from

collusion.'"  Id. (quoting Hanlon, 150 F.3d at 1027); see also

Officers for Justice, 688 F.2d at 625 ("[T]he court's intrusion

upon what is otherwise a private consensual agreement negotiated

between the parties to a lawsuit must be limited to the extent

necessary to reach a reasoned judgment that the agreement is not

the product of fraud or overreaching by, or collusion between,

the negotiating parties, and that the settlement, taken as a

whole, is fair, reasonable and adequate to all concerned.").

The fact that a settlement "could have been better" does not

mean that the settlement is not fair, accurate, or reasonable.

Hanlon, 150 F.3d at 1027 (recognizing that "[s]ettlement is the

offspring of compromise").

       The Court considers a number of factors in determining

whether a settlement agreement is fair, accurate, and

reasonable:

>             [T]he strength of the plaintiffs' case; the
>             risk, expense, complexity, and likely
>             duration of further litigation; the risk of
>             maintaining class action status throughout
>             the trial; the amount offered in settlement;
>             the extent of discovery completed and the
>             stage of the proceedings; the experience and
>             views of counsel; the presence of a
>             governmental participant; and the reaction
>             of the class members to the proposed
>             settlement.

Id. at 1026 (hereinafter the "Hanlon factors").  "The relative

degree of importance to be attached to any particular factor

will depend upon and be dictated by the nature of the claim(s)

advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." Officers for Justice, 688 F.2d at 625.

## DISCUSSION

### I.  Notice

Rule 23(e) requires that notice of a proposed settlement, voluntary dismissal, or compromise be directed "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon, 150 F.3d at 1025 (finding that notice provided to the class met the requirements of Rule 23(c)).  For classes certified under Rule 23(b)(3), as here, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  "Notice provided pursuant to Rule 23(e) must 'generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" Lane, 696 F.3d at 826 (quoting Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 962 (9th Cir. 2009)).  However, this standard "does not require detailed analysis of the statutes or causes of action forming the basis

for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." Id.

In a Minute Order dated September 22, 2016, the Court directed Plaintiffs to submit to the Court a proposed form of notice of the Offer of Judgment to all class members who will be bound by the Judgment. ECF No. 544. Plaintiffs submitted a proposed form of notice on September 26, 2016, ECF No. 547-2, and the Court provided comments on the proposed notice on September 28, 2016, ECF No. 548. The Court and Plaintiffs then engaged in several exchanges regarding the substance and timing of the proposed notice and the deadlines contained therein, before the Court approved the final Notice of the Offer of Judgment ("Notice") and directed that it be mailed to class members by a third party settlement administrator. See ECF Nos. 549, 550, 559, 561, 562, 564, 565.

The Notice provided a brief description of the lawsuit; the class definition; a brief description of the Offer of Judgment; details regarding the fairness hearing on December 7, 2016; the amount class counsel has requested for attorneys' fees and costs, as well as for a compensation award for Dr. Willcox for his role as class representative; and the estimated portion of the Judgment amount each member will receive, along with information regarding how each portion is calculated. See Notice, ECF No. 564-2. The Notice also informed members that if

they wished to object to the Offer of Judgment, they could do so by mailing their written objection to the third party settlement administrator with a postmark date no later than November 14, 2016.  See Notice at 1, 3-4; see also ECF No. 565.

On October 19, 2016, the third party administrator mailed the Notice via first class mail to the borrowers of the 131 IMS loans who will be bound by the Judgment.  Aff. of Kelly Kratz ¶¶ 4, 6.  In order to ensure it had the most accurate information for the class members, the administrator cross-checked members' last known addresses with the National Change of Address database maintained by the United States Postal Service.  Id. ¶ 5.  Of the 131 Notices mailed, four were returned as undeliverable and sent to a professional address search firm for tracing.  Id. ¶ 7.  The firm was unable to locate updated addresses for the four class members, and therefore these Notices were not re-mailed.  Id.  On November 29, 2016, Plaintiffs notified the Court that the administrator did not receive any objections to the Offer of Judgment or to the proposed distribution of the Judgment amount outlined in the Notice.  ECF No. 567.

The Court finds that the Notice complied with the requirements of Rule 23(c)(2) and Rule 23(e)(1).  The Notice provided the best notice of the Offer of Judgment practicable under the circumstances, and provided individual notice to all

members who could be identified through reasonable effort.  See Rule 23(c)(2)(B).  In fact, on July 13, 2016, Plaintiffs brought a Motion to Compel Defendant to Certify Completeness of Class Mailing List, requesting that Lloyds be required to "certify that the class mailing list includes all class members and loans satisfying the class criteria."  ECF No. 445 at 1.  The purpose of that motion was to "redouble . . . efforts to identify the universe of all potential IMS borrowers with loans secured by Hawaii property who could be class members," and "require Defendant . . . to explain what efforts have been taken to ensure that all class members have been identified and certify that the class mailing list is complete – that everyone who should be included has been."  Id.  Plaintiffs' motion resulted in an order from the Magistrate Judge requiring Lloyds to conduct a search for additional borrowers (after a list of potential class members had already been identified) and to file a declaration confirming the process it used to identify these individuals.  See ECF No. 463.

Serious efforts were made to identify the complete universe of potential class members, and additional Notices were mailed out after the settlement administrator had mailed out the initial round of Notices.  The relatively small size of the class also allowed the parties to more accurately identify borrowers whose loans fit the relevant criteria, and all but

four members successfully received Notice.  The Notice itself included information to sufficiently apprise class members of the nature of the lawsuit, the class definition, the Offer of Judgment, and class members' rights; indeed, the Court reviewed multiple versions of the Notice and provided several rounds of comments before permitting the settlement administrator to mail it to class members – a factor which further reinforces the Court's finding that the Notice was sufficient.

For all of the foregoing reasons, the Court finds that the Notice of the Offer of Judgment was proper and complied with Rule 23(c)(2) and Rule 23(e)(1).

## II.   The Hanlon Factors

As noted above, the Court must evaluate and approve the proposed settlement as a whole, rather than on the basis of its component parts.  In assessing the Offer of Judgment, the Court considers each of the Hanlon factors in turn.

### a. Strength of the Plaintiffs' Case

"This factor considers both the likelihood of success on the merits and the range of possible recovery."  In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig., No. 8:10ML 02151 JVS (FMOx), 2013 WL 3224585, at *7 (C.D. Cal. June 17, 2013) (citing Rodriguez, 563 F.3d at 964-65).  However, "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the

merits." <u>Officers for Justice</u>, 688 F.2d at 625.  The Court should not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." <u>Id.</u>  The Offer of Judgment "is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators"; rather the Court's "determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." <u>Id.</u> (citation and quotation marks omitted).

The Summary Judgment Order considerably narrowed the issues in this case.  Significantly, the Court granted partial summary judgment in favor of Lloyds on Count I, making several findings as a matter of law with respect to the Cost of Funds provision that allowed Lloyds a degree of discretion in changing the way it calculated interest rates for the IMS loans.  These findings made judgment in favor of Plaintiffs on Count I quite unlikely.  However, the Court also *sua sponte* granted partial summary judgment in favor of Plaintiffs on Count II, finding that an implied term in the facility agreements limited Lloyds' exercise of the discretion afforded to it by the Cost of Funds provision.  In order to succeed on Count II, Plaintiffs would have to convince a jury that Lloyds', in changing interest

rates, had acted "dishonestly, for an improper purpose,
capriciously, or arbitrarily," or in a manner so unreasonable
that no reasonable lender would do the same.  Summary Judgment
Order at 45 (citing Nash, [2001] EWCA Civ. 1466, at ¶¶ 32, 36,
41-42, 46-47).  Thus, judgment in favor of Plaintiffs on Count
II was likewise uncertain.

        In reviewing the terms of the Offer of Judgment, the
Court finds that the Offer of Judgment properly strikes a
balance between the strengths of Plaintiffs' case, as well as
the risks of continued litigation before a jury.  The terms of
the Offer of Judgment provide Plaintiffs with a fair and
meaningful resolution of their claims, and this factor therefore
weighs in favor of approving the Offer of Judgment.

        **b. Risk, Expense, Complexity, and Likely Duration
           of Further Litigation**

        "In most situations, unless the settlement is clearly
inadequate, its acceptance and approval are preferable to
lengthy and expensive litigation with uncertain results."
National Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D.
523, 526 (C.D. Cal. 2004) (citation omitted); see also Van
Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976)
("It hardly seems necessary to point out that there is an
overriding public interest in settling and quieting
litigation.  This is particularly true in class action suits

which are now an ever increasing burden to so many federal

courts and which frequently present serious problems of

management and expense.").

        The parties have been litigating this case for over

three years.  During that time, the Court has heard multiple

motions to dismiss; a motion for class certification; lengthy

and complex motions for summary judgment that necessitated a

two-day hearing before the Court; and various other motions.

The parties have exchanged over 700,000 pages of documents and

brought multiple discovery disputes before the Magistrate Judge.

Motion at 7-8.  Trial was projected to last approximately three

to four weeks, which, in the Court's view, was a conservative

estimate; additionally, trial was set to take place in at least

two phases.[4]

        Furthermore, the Offer of Judgment was accepted on the

eve of the hearing regarding the parties' Daubert motions, which

was expected to last several days and would have required

multiple expert witnesses to fly to Honolulu from London,

---

[4] On August 15, 2016, the Court bifurcated "all issues and
defenses common to all class members, insofar as they relate to
Plaintiffs' claims for breach of contract and breach of an
implied contractual term," and "any claims or defenses involving
individual class members that are not common to the class,
including the 'unique defenses' Lloyds intend[ed] to raise
against the Dominicks."  ECF No. 472.  The Court noted that
claims and defenses falling into the latter category would be
adjudicated at a subsequent trial in the event Plaintiffs
prevailed in the class action trial.  Id.

England and Cambridge, Massachusetts.  In addition to the Daubert motions it filed, Lloyds also filed a motion for exclusionary sanctions, seeking to exclude the opinions and calculations of Plaintiffs' damages expert.  Uncertainty with respect to whether either party could present expert testimony, and whether Plaintiffs could offer proof of their damages, further underscores the risk of continuing to litigate this case.  Even if the Court did allow each of the parties' experts to testify, this likely would have been an incredibly difficult case for a jury to comprehend, involving complex loan products and topics such as foreign currency markets, benchmark index rates, and lending practices that are unfamiliar to the average layperson.  Moreover, as the Court identified in its Summary Judgment Order, there remain outstanding questions regarding how the loans at issue were funded, which could only have been answered, if at all, by Lloyds' parent company, which is not a party to this lawsuit.  See Summary Judgment Order at 36 n.16.

        As Plaintiffs recognize, there is no guarantee that if this case were to go to trial Plaintiffs would recover anything. The Offer of Judgment, on the other hand, assures that Plaintiffs will receive some award of damages.  The only thing that continued litigation would ensure is the accrual of further costs and attorneys' fees; it is also likely that any judgment would have led to a lengthy, expensive appeal.

All of these factors weigh in favor of approving the Offer of Judgment.

### c. Risk of Maintaining Class Action Status

The Court issued its Class Certification Order on January 8, 2016, certifying the case as a class action. Lloyds attempted to appeal the Class Certification Order by filing a Rule 23(f) Petition, which the Ninth Circuit ultimately denied. For the reasons discussed in its Class Certification Order, as well as its Order Denying Defendant's Motion to Compel Plaintiffs to Present a Trial Plan ("Trial Plan Order"), the Court feels that it is highly unlikely that the class would have been decertified at any point. See Trial Plan Order at 7 ("The Court has also found that the 'key legal issue' – whether Lloyds permissibly passed on the 'liquidity transfer pricing' ('LTP') charge to borrowers by including it in the Cost of Funds – is common to all class members . . . . Thus, the Court can identify no problems with individualized proof that would require a trial plan at this stage in the litigation."), ECF No. 471.

Nevertheless, the Court notes that an order granting class certification can be amended at any time before final judgment. Fed. R. Civ. P. 23(c)(1)(C). The Offer of Judgment mitigates any risk that the Plaintiff class would be decertified.

### d. Amount Offered in Settlement

In assessing the settlement amount, the Court must again bear in mind that "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." Officers for Justice, 688 F.2d at 625; see also Lane, 696 F.3d at 823 ("[W]e reject Objectors' argument insofar as it stands for the proposition that the district court was required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award."). Furthermore, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 (2d Cir. 1974)).  The ultimate inquiry with which the Court is faced is whether the Offer of Judgment is "fair, adequate, and free from collusion." Lane, 696 F.3d at 826 (citation omitted).

Here, the parties participated in arm's length settlement discussions in 2015; exchanged settlement communications in July 2016; attended a settlement conference before the Magistrate Judge on July 27, 2016; and further

discussed settlement both prior to and following the final

pretrial conference before the Magistrate Judge.  Motion at 12-

13; Response at 5-6.  Plaintiffs' damages expert, Mr. Petley,

calculated approximately $7.5 million in alleged overcharges.

Response at 13.  However, Plaintiffs contend that "Lloyds'

settlement position initially was less than zero."  Motion at 2,

13 (describing Lloyds' initial settlement position as "similar

to [that] reached in the Washington Land Development case filed

in Washington state, which was 'dismissed after a settlement

payment was made by the plaintiff to Lloyds Bank.'").

In agreeing to the $2,000,000.00 proposed by the Offer

of Judgment, the parties appear to have made serious, good faith

efforts to settle, with both ceding ground on their initial

positions.[5]  The Offer of Judgment was made after multiple

negotiations conducted at arm's length and after multiple

---

[5] In addition to the $7.5 million Plaintiffs claimed for past
damages, the TAC also requested a permanent injunction
restraining and enjoining Lloyds from breaching the IMS loan
agreements; attorneys' fees and costs; pre-judgment and post-
judgment interest; an order declaring the formula for the
interest rate calculation and that Lloyds had breached the loan
agreements by charging a higher interest rate than that agreed
to by the parties; and a "judicial declaration made in
accordance with findings in Plaintiffs' favor so that Plaintiffs
and the Class may ascertain their rights and duties under the
Loans."  TAC at 19-20.  The Offer of Judgment does not provide
the additional relief Plaintiffs seek in the TAC, nor will such
relief be granted; however, Plaintiffs to do not appear to seek
such further relief, beyond what is proposed by the Offer of
Judgment.

attempts at settlement had failed.  Furthermore, under the proposed Judgment distribution each borrower will receive a proportionate share of the Judgment based on the calculated interest overcharges on their loan(s).  Notice at 3. Additionally, under the proposed distribution, named Plaintiff Dr. Willcox stands to recover less than other unnamed class members, even when taking into consideration the $10,000.00 award Plaintiffs have requested that he receive for his role as class representative.  The fact that members who allegedly suffered greater harm will receive greater compensation indicates that the proposed distribution is fair.  See Hendricks v. StarKist Co., Case No. 13-cv-00729-HSG, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015) ("A plan for allocation of a settlement fund is governed by the same legal standards that apply to the approval of a settlement: the plan must be fair, reasonable, and adequate . . . . This means that, to the extent feasible, the plan should provide class members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount.").  Equally as important is that, as noted above, the Offer of Judgment provides certainty to class members that they will recover some amount of money, a benefit that cannot be overstated in this complex case.

For all of these reasons, the Court finds that this factor weighs in favor of approval of the Offer of Judgment.

- 26 -

### e. Extent of Discovery Completed and Stage of Proceedings

"Consideration of the extent of discovery and the current stage of the litigation allows the Court to evaluate whether the parties are able to make decisions about their claims based on information received during the discovery process." In re Toyota, 2013 WL 3224585, at *10 (citing Linney, 151 F.3d at 1239). "Where a settlement occurs in an advanced stage of the proceedings, this fact supports a finding that the parties had the opportunity to investigate their claims before resolving them." Id.; see also National Rural, 221 F.R.D. at 527 ("If all discovery has been completed and the case is ready to go to trial, the court obviously has sufficient evidence to determine the adequacy of settlement.") (citation omitted).

Discovery was completed in this case over a year ago. See Fifth Am. Rule 16 Scheduling Order ¶ 12 (listing discovery deadline as October 30, 2015). As stated above, the parties have exchanged over 700,000 pages of documents and litigated multiple discovery disputes before the Magistrate Judge. Motion at 7-8. Plaintiffs and Lloyds both retained two experts who submitted various expert reports and who were deposed. Id. at 8. Additionally, the parties took six other depositions and consented to the use of multiple depositions from previous lawsuits involving Lloyds' IMS loans. Id. Furthermore, this

case has undergone multiple motions to dismiss, full briefing on Daubert motions, and exchange of trial exhibits.  A lengthy summary judgment order significantly narrowed the issues in this action, and the Offer of Judgment was made and accepted less than a month before trial.

Given these factors, the Court finds that the parties had a full opportunity to evaluate the strengths and weaknesses of their respective cases, and that Lloyds was in a position to make, and Plaintiffs were in a position to accept, a meaningful Offer of Judgment.  This factor weighs in favor of approving the Offer of Judgment.

### f. Experience and Views of Counsel

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." National Rural, 221 F.R.D. at 528 (citation omitted); see also Ellis v. Naval Air Rework Facility, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). "This is because ''[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'" National Rural, 221 F.R.D. at 528 (quoting In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995)).

- 28 -

Here, Plaintiffs are represented by both mainland and local counsel.  Plaintiffs' mainland counsel, Steptoe & Johnson LLP, has extensive experience in financial services class action litigation, including experience in two prior actions involving Lloyds' IMS loan product.  Decl. of Stephen Fennell in Supp. of Pls.' Mot. for Class Certification ¶ 4, ECF No. 156-57; Motion at 22.  Plaintiffs' local counsel, Alston Hunt Floyd & Ing, likewise has extensive experience litigating class actions. Decl. of Paul Alston ¶¶ 3-4, ECF No. 156-58.  Given the history of this case, as well as the experience of class counsel, it is clear to the Court that Plaintiffs' attorneys are well-versed in the relevant issues and strengths and weaknesses of their case. It is class counsel's view that the Offer of Judgment is fair, adequate, and reasonable, and the Court therefore finds that this factor weighs in favor of approving the Offer of Judgment.

### g. Presence of a Governmental Participant

Because no governmental actor participated in the instant litigation, this factor is irrelevant to the Court's analysis.

### h. Reaction of the Class Members to the Proposed Settlement

Notice of the Offer of Judgment was sent to all class members on October 19, 2016.  Aff. of Kelly Kratz ¶ 6.  The Notice informed members that if they wished to object to the

Offer of Judgment, they could do so by mailing their written objection to the third party settlement administrator with a postmark date no later than November 14, 2016.  See Notice at 1, 3-4; see also ECF No. 565.  On November 29, 2016, Plaintiffs notified the Court that, as of November 28, 2016, the administrator had not received any objections to the Offer of Judgment or the proposed distribution of the Judgment amount outlined in the Notice.  ECF No. 567.  The absence of any objections weighs in favor of the Court's approval of the Offer of Judgment.  See  National Rural, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

An assessment of the Hanlon factors leads the Court to conclude that the Offer of Judgment is fair, adequate, and reasonable.  The Court therefore preliminarily APPROVES the Offer of Judgment and preliminarily APPROVES Plaintiffs' Motion to Approve and Enter Judgment.

### III.  Attorneys' Fees and Costs

Rule 23(h) provides, "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  "A federal court sitting in diversity must apply state law with

regard to the allowance or disallowance of attorneys' fees

. . . . The applicable state law also includes state choice of

law rules." DeRoburt v. Gannett Co., Inc., 558 F. Supp. 1223,

1226 (D. Haw. 1983). "In the absence of any specific state

directives, a choice of law determination regarding a claim

for attorneys' fees should be guided by the applicable

substantive law of a case." Id.

The Court has been unable to locate any authority

speaking to how Hawaii courts specifically treat attorneys' fees

in a choice of law analysis. Helpfully, however, this Court has

previously determined that Hong Kong law governs this dispute.

See ECF No. 49. Hong Kong follows the "English Rule," which

provides that "the prevailing party is generally entitled to an

attorney's fees award." See Alaska Rent-A-Car, Inc. v. Avis

Budget Grp., Inc., 738 F.3d 960, 972 (9th Cir. 2013); Petition

at 3 ("Hong Kong follows the 'English Rule' . . . ."). Under

Hong Kong law, "the costs of and incidental to all proceedings

. . . shall be in the discretion of the Court, and the Court

shall have full power to determine by whom and to what extent

the costs are to be paid." Hong Kong High Court Ordinance (CAP.

4) § 52A(1), ECF No. 545-1. "This discretion must be exercised

judicially; it must not be exercised arbitrarily but in

accordance with reason and justice, and the judge ought not to

exercise it against the successful party except for some reason

connected with the case." Halsbury's Laws of Hong Kong –
Commentary § 90.1281, ECF No. 545-2.

Because the Court appears to have a great deal of
discretion in awarding fees and costs under Hong Kong law, in
exercising that discretion it will look to Ninth Circuit law as
a guidepost for what constitutes a reasonable award. "Under
federal law, reasonable attorneys' fees are generally based on
the traditional 'lodestar' calculation set forth in Hensley v.
Eckerhart, 461 U.S. 424, 433 (1983)." Howerton v. Cargill,
Inc., Civ. Nos. 13-00336 LEK-BMK, 13-00685 LEK-BMK, 14-00218
LEK-BMK, 2014 WL 6976041, at *4 (D. Haw. Dec. 8, 2014) (citing
Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000)).
The lodestar amount is determined by "the number of hours
reasonably expended on the litigation multiplied by a reasonable
hourly rate." Hensley, 461 U.S. at 433. Subsumed in the
lodestar calculation are the following factors: "(1) the
novelty and complexity of the issues, (2) the special skill and
experience of counsel, (3) the quality of representation, . . .
(4) the results obtained . . . and (5) the contingent nature of
the fee agreement." Morales v. City of San Rafael, 96 F.3d 359,
364 n.9 (9th Cir. 1996) (internal citations and quotation marks
omitted).

Once calculated, the lodestar amount is presumed
reasonable. City of Burlington v. Dague, 505 U.S. 557, 562

(1992); <u>Fischer</u>, 214 F.3d at 1119 n.4.  However, in "rare and exceptional circumstances" a court may adjust the lodestar amount based on those factors articulated in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975), that are not subsumed in the court's initial lodestar calculation. <u>Fischer</u>, 214 F.3d at 1119 n.4; <u>Morales</u>, 96 F.3d at 363-64. These factors are:  the time and labor required for the case, the preclusion of other employment by the attorney due to acceptance of the case, the customary fee, time limitations imposed by the client or the circumstances, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases. <u>Kerr</u>, 526 F.2d at 70.

With respect to the number of hours reasonably expended, "a party seeking attorneys' fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained." <u>Howerton</u>, 2014 WL 6976041, at *6.  Thus, in calculating the lodestar figure, a "district court . . . should exclude from [the] initial fee calculation hours that were not 'reasonably expended.'" <u>Hensley</u>, 461 U.S. at 434.  Hours are not "reasonably expended" if they are "excessive, redundant, or otherwise unnecessary."  <u>Id.</u>  "In determining reasonable fees the court also must assess the extent to which fees and costs

could have been avoided or were self-imposed." Tirona v. State
Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 637 (D. Haw. 1993).

   In setting the reasonable hourly rate for purposes of
the lodestar calculation, courts will look to the "prevailing
market rates in the relevant community." Gonzalez v. City of
Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013). "Generally, when
determining a reasonable hourly rate, the relevant community is
the forum in which the district court sits." Id. (quoting
Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir.
2010)). In making its determination, a court will consider the
experience, skill, and reputation of the attorney. Id. at 1205-
06.

   Because the Court uses the lodestar analysis simply as
a guide in determining the reasonableness of Plaintiffs'
requested attorneys' fees and costs, the Court will not endeavor
to conduct an in-depth analysis into the hourly rates and
reasonable hours billed by class counsel. The Court will also
use the hourly calculations supplied by class counsel.

   The Court first notes that of the $800,000.00
Plaintiffs have requested for attorneys' fees and costs,
approximately $700,000.00 is comprised of litigation expenses.
See ECF Nos. 556-2, 556-5. Such expenses include costs for
services of the third party settlement administrator; expert
fees; travel expenses; transcript fees; and court filing fees.

The Court finds that such costs are largely reasonable and that Plaintiffs' counsel is entitled to reimbursement for such.  See Alberto v. GMRI, Inc., No. CIV. 07-1895 WBS DAD, 2008 WL 4891201, at *12 (E.D. Cal. Nov. 12, 2008) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund.").

Focusing solely on the hours incurred by Plaintiffs' local counsel over the past three and a half years, the Court notes that counsel spent a total of 2,486.8 hours on this case. See Decl. of Glenn T. Melchinger ¶ 8, ECF No. 556-3; ECF No. 556-4.  A review of these hours indicates that the time spent was largely reasonable.  Multiplying these hours by the corresponding hourly rates, which are mostly within the relevant lodestar range, results in a total fee calculation of $783,498.11.  See Decl. of Glenn T. Melchinger ¶ 8.  Per agreement, mainland counsel has paid all of local counsel's fees and expenses out of pocket.  Petition at 6 n.5.

Class counsel has not provided a detailed accounting of the hours expended by mainland counsel, but provides the hourly rates its attorneys usually command (which are not necessarily within the local lodestar range), multiplied by the hours the attorneys spent on this litigation in order to provide further context for the reasonableness of the requested

- 35 -

attorneys' fees amount.  See ECF No. 556-1.  Counsel represents

that as of October 3, 2016, mainland counsel has accrued

approximately $3,257,163.00 in fees for certain named attorneys.

See id.  Additional attorneys and staff also accrued fees for

work spent on various projects during the three-year litigation,

which fees mainland counsel does not specifically delineate for

the Court.  See id. ¶ 13.  Plaintiffs represent that, in total,

class counsel has incurred in excess of $5 million in attorneys'

fees.  Petition at 4-5.

It is clear to the Court that, even taking into

consideration the possibility that certain attorneys' rates may

exceed the permissible lodestar range and that certain hours

spent might be unreasonable, the combined attorneys' fees for

Plaintiffs' local and mainland counsel, for which mainland

counsel has been entirely responsible, far exceed the amount

Plaintiffs have requested for attorneys' fees.

As an alternative basis to determine the

reasonableness of the award, the Court considers the

"percentage-of-recovery method."  See Alberto, 2008 WL 4891201,

at *11 (quoting In re Rite Aid Corp. Sec. Litig., 396 F.3d 294,

300 (3d Cir. 2005)) ("To determine attorneys' fees, courts

'typically apply either the percentage-of-recovery method or the

lodestar method' . . . . The percentage-of-recovery method is

favored in common-fund cases because it 'allows courts to award

fees from the fund in a manner that rewards counsel for success and penalizes it for failure.'"). In the Ninth Circuit, "such fee awards range from 20 percent to 30 percent of the fund created." Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989). The Ninth Circuit has also "note[d] with approval" one court's conclusion that "the 'bench mark' percentage for the fee award should be 25 percent." Id. Since 25 percent of the Judgment award is $500,000, Plaintiffs' request for a fee award of approximately $100,000 is reasonable.

Finally – and significantly – the Court did not receive any objections from any class members regarding the requested amount for class counsel's attorneys' fees and costs.

For all of the foregoing reasons, the Court is satisfied that the $800,000.00 Plaintiffs have requested be set aside from the Judgment amount for attorneys' fees and costs is both fair and reasonable. The Court preliminarily APPROVES Plaintiffs' request for attorneys' fees and costs.

### IV.   Compensation Award for Class Representative

"Incentive awards are fairly typical in class action cases." Rodriguez, 563 F.3d at 958 (emphasis omitted). Such incentive, or compensation, awards are discretionary and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to

recognize their willingness to act as a private attorney general." Id. at 958-59; see also Alberto, 2008 WL 4891201, at *12 ("[A] class representative is entitled to some compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action.") (citation omitted).  The Court must assess these awards individually, "using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation.'" Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003) (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).  Such awards "must be reasonable in light of applicable circumstances, and not 'unfair' to other class members." Alberto, 2008 WL 4891201, at *12 (citation omitted).

Dr. Willcox has played an important and involved role in the instant litigation over the past three years.  He has responded to fifteen interrogatories and 39 requests for production; was deposed for a full day; attended the summary judgment hearing and one of the settlement hearings; and "has spent many hours with Counsel conferring on or approving major strategic decisions for both himself and the Class, as well as

reviewing pleadings and other documents." Supplemental Brief at 2.

Here, an incentive award of $10,000.00 for Dr. Willcox will have minimal impact on the amount of Judgment funds available to the rest of the class members. Such an award represents approximately one half of one percent of the total Judgment amount of $2,000,000.00, and less than one percent of the amount to be distributed to the class after fees and costs. Id. at 4. Furthermore, as noted above, the total distribution Dr. Willcox will receive, including his compensation award, is less than what other unnamed class members will recover, indicating that such an award is reasonable. Importantly, the Court did not receive any objections from class members opposing the incentive award.

For all of the foregoing reasons, the Court finds that an incentive award of $10,000.00 for Dr. Willcox to compensate him for his role as class representative is both fair and reasonable and preliminarily APPROVES Plaintiffs' request for the same.

## CONCLUSION

For the foregoing reasons, the Court preliminarily APPROVES the Offer of Judgment and preliminarily APPROVES Plaintiffs' Motion to Approve and Enter Judgment. The Court further preliminarily APPROVES Plaintiffs' request for

$800,000.00 as an award of attorneys' fees and costs, as described in Plaintiffs' Petition in Support of Distribution of Fees and Expenses, and preliminarily APPROVES Plaintiffs' request for $10,000.00 as an award for Dr. Bradley Willcox for his role as class representative in this action.[6]

The Court ORDERS Lloyds to serve the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715(b) within ten days of the entry of this Order, and then to file a declaration certifying compliance with the CAFA notice requirement.  The Court ORDERS Plaintiffs to provide Lloyds with a list of the 131 loans by Class ID, along with the specific amount of the Judgment to be paid to each borrower on each loan. If no objections are received from the appropriate federal or state officials within the 90-day statutory period, see 28 U.S.C. § 1715(d), the Court will enter judgment in favor of Plaintiffs and issue an order granting final approval of the Offer of Judgment.  Lloyds shall then have two weeks from the entry of the final order and judgment to issue payments to class members, Plaintiffs' counsel, and the class representative in

---

[6] During the fairness hearing Plaintiffs' counsel proposed a *cy pres* remedy to address the undisbursed funds meant for the four borrowers the third party administrator was unable to locate. Plaintiffs' counsel agreed to submit a memorandum to the court regarding the *cy pres* remedy.  Because the Court has not yet received Plaintiffs' memorandum, the Court will address the *cy pres* remedy by separate order.

accordance with Plaintiffs' proposed distribution, after which

Lloyds must file with the Court a notice certifying that such

payments have been made and a final class list setting forth (by

name and city) the class members bound by the Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, December 14, 2016.



Alan C. Kay
Sr. United States District Judge

Willcox v. Lloyds TSB Bank, PLC, et al., Civ. No. 13-00508 ACK-RLP, Order
Preliminarily Approving Defendant's Offer of Compromise, Preliminarily
Approving Plaintiffs' Motion to Approve and Enter Judgment, Preliminarily
Approving Plaintiffs' Request for Attorneys' Fees and Costs, and
Preliminarily Approving Plaintiffs' Request for Incentive Award for Class
Representative.